UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re QIWI plc Securities Litigation         :   Case No. 1:20-cv-06054-RPK-CLP
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :
                                              :   **ECF Case**
This Document Relates To:                     :   **Electronically Filed**
                                              :
ALL ACTIONS.                                  :   **Oral Argument Requested**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# REPLY MEMORANDUM OF LAW OF
# QIWI PLC AND ANDREY PROTOPOPOV
# IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS
# THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Alexander C. Drylewski
William J. O'Brien
One Manhattan West
New York, NY 10001
Phone: (212) 735-3000
Fax: (212) 735-2000
alexander.drylewski@skadden.com
william.obrien@skadden.com

*Attorneys for QIWI plc and*
 *Andrey Protopopov*

November 1, 2021

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT .............................................................................................................................1

I.      Plaintiff Fails To Adequately Plead Falsity ......................................................................1

          A.      Plaintiff Fails To Plead That QIWI Engaged in Undisclosed Misconduct ..............1

          B.      Plaintiff Fails to Allege Any Misstatements About Regulatory Compliance ..........2

          C.      Plaintiff Fails to Allege Misstatements About Internal Controls .............................6

          D.      Plaintiff Fails to Allege Misstatements About Financial Performance ...................7

          E.      Numerous Statements Are Protected As Opinions Or Forward-Looking ...............7

          F.      Multiple Statements Represent Non-Actionable Puffery ........................................8

II.     Plaintiff Fails To Plead a Strong Inference of Scienter .......................................................8

III.    Plaintiff Fails to State a Claim For Control Person Liability ...........................................10

CONCLUSION .........................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Acito v. IMCERA Group, Inc.*,
    47 F.3d 47 (2d Cir. 1995)..................................................................................................4

*Canez v. Intelligent Systems Corp.*,
    No. 19-CV-3949 (RPK) (CLP), 2021 WL 3667012
    (E.D.N.Y. Aug. 18, 2021)..................................................................................................9

*DoubleLine Capital LP v. Odebrecht Finance, Ltd.*,
    323 F. Supp. 3d 393 (S.D.N.Y. 2018)...............................................................................7

*ECA & Local 134 IBEW Joint Pension Trust*
    *of Chicago v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)..............................................................................................9

*Employees' Retirement System of*
    *Government of Virgin Islands v. Blanford*,
    794 F.3d 297 (2d Cir. 2015)..............................................................................................8

*Kleinman v. Elan Corp., plc*,
    706 F.3d 145 (2d Cir. 2013)..............................................................................................3

*Lachman v. Revlon, Inc.*,
    487 F. Supp. 3d 111 (E.D.N.Y. 2020) ...............................................................4, 5, 8, 10

*In re Lions Gate Entertainment Corp. Securities Litigation*,
    165 F. Supp. 3d 1 (S.D.N.Y. 2016) ...............................................................................3, 4

*Marcu v. Cheetah Mobile Inc.*,
    No. 18-CV-11184 (JMF), 2020 WL 4016645 (S.D.N.Y. July 16, 2020) ....................2, 10

*Martinek v. AmTrust Financial Services, Inc.*,
    No. 19 Civ. 8030 (KPF), 2020 WL 4735189 (S.D.N.Y. Aug. 14, 2020) ..........................8

*Meyer v. JinkoSolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014)..............................................................................................5

*In re Morgan Stanley Information Fund Securities Litigation*,
    592 F.3d 347 (2d Cir. 2010)..............................................................................................1

*Oklahoma Law Enforcement Retirement*
    *System v. Papa John's International, Inc.*,
    444 F. Supp. 3d 550, 563 (S.D.N.Y. 2020).......................................................................4

*Palmer v. City of New York*,
   No. 19-CV-5542 (RPK) (CLP),
   2021 WL 4480572 (E.D.N.Y. Sept. 30, 2021) ...................................................................6

*Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*,
   11 F.4th 90 (2d Cir. 2021) ..............................................................................................2, 3

*In re ProShares Trust Securities Litigation*,
   728 F.3d 96 (2d Cir. 2013)..................................................................................................5

*Rosi v. Aclaris Therapeutics, Inc.*,
   No. 19-cv-7118 (LJL), 2021 WL 1177505 (S.D.N.Y. Mar. 29, 2021)................................5

*Venkataraman v. Kandi Technologies Group, Inc.*,
   No. 20 Civ. 8082 (LGS), 2021 WL 4952260 (S.D.N.Y. Oct. 25, 2021) ...........................10

*In re VEON Ltd. Securities Litigation*,
   No. 15-cv-08672 (ALC), 2017 WL 4162342 (S.D.N.Y. Sept. 19, 2017)...........................7

*Zanghi v. Ritella*,
   No. 19 Civ. 5830 (NRB), 2021 WL 4392756 (S.D.N.Y. Sept. 24, 2021) ..........................8

## STATUTES AND RULES

15 U.S.C. § 78u-4(b)(2)(A)..............................................................................................................9

## PRELIMINARY STATEMENT

Plaintiff's Opposition confirms that the CAC[1] lacks any particularized basis for asserting securities fraud. Indeed, Plaintiff merely doubles down on its speculative theory, which is directly contradicted by the very disclosures Plaintiff seeks to challenge and is devoid of any support—including a single document, communication, confidential witness allegation, or cognizable motive to commit fraud. What little is pled constitutes a quintessential example of "fraud by hindsight," an opportunistic pleading tactic through which Plaintiff identifies a negative event in the life of the Company and concludes that fraud *must have* occurred (in this case, by mischaracterizing or ignoring the many disclosures that are unhelpful to its case). But QIWI's public statements must be "taken together and in context," not through the distorted lens that Plaintiff presents. *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 366 (2d Cir. 2010). Applying this broader frame makes clear that Plaintiff fails to allege any false or misleading statement or a basis to infer scienter as to any of the Defendants. A faithful reading of QIWI's full disclosures, on the other hand, paints the picture of a management team that provided accurate, timely, and meaningful information to investors amid a rapidly evolving regulatory environment, all while extensively warning of the substantial risks and uncertainties involved. Nothing in the Opposition suggests otherwise.

## ARGUMENT

**I.     Plaintiff Fails To Adequately Plead Falsity**

    **A.     Plaintiff Fails To Plead That QIWI Engaged in Undisclosed Misconduct**

Where, as here, "a securities fraud claim is premised on the defendant's predicate violations of law . . . , the facts of that underlying violation must be pled with particularity." *Plumber &*

---

[1] Capitalized terms shall have the same meanings ascribed to them in Defendants' opening brief ("MTD").

*Steamfitters Local 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 99 (2d Cir. 2021). (MTD 13.) Like the CAC, the Opposition does not even attempt to satisfy this requirement. Instead, without citing any law, rule or regulation, Plaintiff simply points to QIWI's December 2020 disclosure and argues that the Company engaged in unspecified "violative conduct." (Opp'n 12.) But Plaintiff's argument ignores the disclosure itself and conflates the record-keeping violations (which resulted in a relatively minor fine) with the broader restrictions imposed by the CBR, which the Company stated that it believed to be reflective of the CBR's broader and "increased scrutiny in the areas of cyberspace and cross border payments," rather than the "specific deficiencies identified" in the audit. (MTD 12.) Plaintiff does not plead any facts, particularized or otherwise, to undermine this disclosure.[2] Accordingly, it does not allege any misrepresentation related to a legal violation "with sufficient specificity." *Marcu v. Cheetah Mobile Inc.*, No. 18-CV-11184 (JMF), 2020 WL 4016645, at *3 (S.D.N.Y. July 16, 2020).

### B. Plaintiff Fails to Allege Any Misstatements About Regulatory Compliance

Plaintiff's allegations related to the CBR's 2020 audit and regulatory compliance also fail for other reasons. Throughout the Opposition, Plaintiff repeats *ad nauseam* the refrain that Defendants improperly concealed the existence of the 2020 routine audit and the purported violations it discovered. (*See* Opp'n 1, 2, 9, 11, 12, 14, 15, 17, 20, 24, 26, 27, 29.) According to Plaintiff, Defendants were required to disclose the existence of the routine audit immediately once it started in July 2020, as well as the audit's results at some unspecified point before it was completed in December 2020. Plaintiff is wrong on both accounts.

---

[2] Indeed, following the announcement, the CBR placed similar restrictions on at least one of QIWI's key competitors. (MTD 12.) Plaintiff also incorrectly suggests that the unspecified violations "were not minor" because "they would have affected 33% to 40% of [QIWI's] Payment Services Segment Net Revenue." (Opp'n 27.) In fact, those figures reflected the hypothetical impact of the CBR's new restrictions, *not* the scope or significance of the record-keeping violations. (*See* CAC ¶ 228.)

2

As to the existence of the routine audit, Defendants had no "duty to disclose uncharged, unadjudicated wrongdoing," *Plumber & Steamfitters Local 773*, 11 F.4th at 98, and "[d]isclosure of an item of information is not required . . . simply because it may be relevant or of interest to a reasonable investor." *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 152-53 (2d Cir. 2013); *see also In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016) (no duty to disclose existence of government investigation). This well-established principle is all the more true here, where QIWI repeatedly told investors that "[t]he CBR may *at any time* conduct full or selective audits of any bank's filings and may inspect all of its books and records," and that those future inspections could "result in discovery of . . . significant or minor additional violations" that could lead to material sanctions. (MTD 10.)[3]

The Company also disclosed, *inter alia*, that (i) its activities were "subject to extensive and actively developing regulation in Russia"; (ii) many of the laws to which it was subject "are constantly evolving, and are often unclear and inconsistent with other applicable laws and regulations, . . . making compliance challenging"; (iii) "Russian legislation relating to banks and bank accounts is subject to varying interpretation and inconsistent application"; and (iv) its "services have been and may continue to be used for fraudulent, illegal or improper purposes, which could expose us to additional liability and harm our business," including in relation to "illegal online gambling." (MTD 8-11.) With respect to online betting in particular, QIWI disclosed that (i) "[t]he betting industry is subject to extensive and actively developing regulation in Russia, as well as increasing government scrutiny," and (ii) new regulatory measures "may

---

[3] Indeed, the CBR's publicly available operating procedures in effect until May 8, 2020, state that the CBR was required to audit companies like QIWI Bank at least once every two years. (*See* Drylewski Reply Decl., Ex. B, at § 1.4.) The procedures were updated in May 2020 to require audits every three years. (*See id.*, Ex. A, at § 1.2.3.) Consistent with this, QIWI previously disclosed the completion of CBR audits that took place in 2016 and 2018. (*See id.*, Ex. C, at 17; MTD, Ex. D, at 12.) This undermines any notion that the 2020 audit was some sort of surprise.

3

result in the contraction of the betting sector or our share in this market and therefore adversely affect" its financial results or lead to "fines and other sanctions." (*Id.* at 9.) "This steady stream of warnings renders implausible plaintiffs' suggestion that defendants were engaged in a scheme to deliberately or recklessly mislead investors . . . ." *Lachman v. Revlon, Inc.*, 487 F. Supp. 3d 111, 138 (E.D.N.Y. 2020) (Kovner, J.).[4]

As to the routine audit's results, Plaintiff pleads no facts suggesting that Defendants were, or should have been, aware of the results at any point before their disclosure in December 2020. Absent such facts, there can be no duty to disclose. *See Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995) ("Mere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud . . . . [D]efendants' lack of clairvoyance simply does not constitute securities fraud."); *Lions Gate*, 165 F. Supp. 3d at 12 ("[T]he securities laws do not impose an obligation on a company to predict the outcome of investigations.").

Plaintiff attempts to avoid this conclusion by contending that the Company's disclosures "characterized then-materialized risks as merely potential or hypothetical." (*E.g.*, Opp'n 13-14.) But while Plaintiff points to the Company's disclosures in March 2020 and July 20, 2020, it fails to plead that either disclosure was made after the audit began in "July 2020." (CAC ¶¶ 9, 16, 121.) Even more importantly, the potentially material risks identified in QIWI's disclosures—that the CBR could discover legal violations and impose significant sanctions—did not materialize until December 9, 2020 (*id.* ¶ 13), well after both risk disclosures had been made. *See Okla. L. Enf't Ret. Sys. v. Papa John's Int'l, Inc.*, 444 F. Supp. 3d 550, 563 (S.D.N.Y. 2020) ("[A]n increase in

---

[4] Plaintiff unsuccessfully attempts to distinguish several of Defendants' cases by making the same or a similar assertion throughout the Opposition. (*See* Opp'n 13 n.7, 14 n.8, 23 n.13, 30 n.17.) For instance, Plaintiff suggests that *Lachman* is distinguishable because it does not involve allegations showing that the defendants improperly concealed an important event from the market or framed already materialized risks as hypothetical. (*See id.* at 30 n.17.) But neither does this case. (*See* MTD 19 n.5, 20.)

4

a risk does not mean the risk has already come to pass, such that a disclosure that simply identifies the risk would be misleading." (citation omitted)).

Plaintiff also argues that, because Defendants "chose to speak about CBR audits, CBR violations, ongoing success in remedying violations, and future audit risks," Defendants "had a duty to disclose the whole truth to investors." (Opp'n 15; *accord id.* at 17.) The "whole truth," according to Plaintiff, consisted of "all aspects of the ongoing CBR audit and the practices that ultimately led to damaging sanctions," and, incredibly, should even have included "*all communications with and disclosures to the CBR in conjunction with the audit.*" (*Id.* at 15, 29 (emphasis added).) Plaintiff's argument misconstrues both the alleged facts and the law.

As indicated, Plaintiff alleges no particularized facts whatsoever as to "the practices that ultimately led to damaging sanctions," much less facts showing that Defendants were aware of those practices or the audit's results before December 2020. *See Lachman*, 487 F. Supp. 3d at 127-28 (plaintiffs must "'demonstrate *with specificity* why and how each statement' they challenge 'is false or misleading" (citation omitted)). Plaintiff does not explain how QIWI failed to tell the "whole truth," and its untenable assertion that QIWI was required to divulge "all aspects" and "all communications" relating to the CBR's audit while it was still ongoing lacks all merit. *See In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 102 (2d Cir. 2013) (companies need not "bury the shareholders in an avalanche of trivial information" (citation omitted)).[5]

---

[5] Plaintiff's cases either support Defendants' point, *see, e.g., Rosi v. Aclaris Therapeutics, Inc.*, No. 19-cv-7118 (LJL), 2021 WL 1177505, at *12 (S.D.N.Y. Mar. 29, 2021) (concluding that defendants "were not under a duty to report" certain information because plaintiff failed to allege that the reported information was inaccurate or that defendants "omitted anything of significance" from their statement), or involved specific factual allegations that bear no resemblance to the threadbare allegations at issue here. *See, e.g., Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 248, 251 (2d Cir. 2014) (investor would be misled by statement discussing pollution abatement equipment and environmental monitoring teams that indicated reasonably effective efforts to comply with environmental regulations where report submitted by company to regulators described how company was "not disposing of hazardous solid waste in accordance with relevant disposal methods, and was emitting high levels of fluorides," such that "the equipment and [monitoring] team were then failing to prevent substantial violations of Chinese regulations").

5

Finally, Plaintiff claims that Defendants misled investors to believe that QIWI had remedied the violations discovered in the CBR's 2018 audit. (*See* Opp'n 1, 2, 9, 11, 16, 26.) In doing so, Plaintiff selectively quotes the Company's statement that "[w]e believe that we have remedied the violations and taken appropriate measures to ensure that we will not be in breach of such requirements going forward." (*Id.* at 9, 16, 26.) Plaintiff troublingly omits the very next sentence, however, which expressly warned that "there can be *no assurance* that additional sanctions will not be imposed on us" or "that any currently planned or future inspections will not result in discovery of any *significant or minor additional violations* of various banking regulations . . . ." (MTD 10; CAC ¶¶ 142, 181, 200 (emphasis added).) The full statement lays waste to Plaintiff's claim that QIWI misled investors to believe that "regulatory violations were in the past" or that "any new CBR audit would not pose material problems for the Company." (Opp'n 7, 16.)[6]

### C. Plaintiff Fails to Allege Misstatements About Internal Controls

Plaintiff all but abandons its claims regarding statements about QIWI's internal controls. Indeed, Plaintiff's entire argument is relegated to a single unsupported sentence in a footnote, stating that "the CBR found violations as to [QIWI's] 'reporting and record-keeping requirements.'" (Opp'n 12 n.6.) Because this assertion does not address any of Defendants' arguments or the cases supporting them, these claims fail for the reasons stated in the Motion. (*See* MTD 15, 19-20.) *See Palmer v. City of New York*, No. 19-CV-5542 (RPK) (CLP), 2021 WL 4480572, at *6 (E.D.N.Y. Sept. 30, 2021) (Kovner, J.) (claims abandoned where plaintiffs failed to respond to arguments in motion to dismiss).

---

[6] Plaintiff uses the same tactic in asserting that Defendants misled investors to believe that new regulations would "be basically positive" for QIWI. (*See* Opp'n 9, 11, 26.) Plaintiff fails to mention that the quoted prediction was made in response to an analyst's question about a specific "draft bill," not any and all new regulations generally. (*See* CAC ¶ 153.) In any event, Plaintiff also ignores the Company's extensive and detailed disclosures about the risks posed by new regulations. (*See* MTD 8-10.)

### D. Plaintiff Fails to Allege Misstatements About Financial Performance

Plaintiff's challenge to QIWI's accurately reported financial metrics also fails. (MTD 20-22.) Plaintiff merely repeats its unsupported assertion that Defendants concealed the "improper operations" identified by the CBR and cites to various inapposite cases. (Opp'n 15 n.9.)[7] Plaintiff fails to dispute that (1) it has not alleged that betting-related revenue was derived from illicit activity (MTD 22); (2) accurate financial statements are not actionable simply because a company fails to disclose that wrongdoing may have contributed to financial performance (*id.* at 20-21); (3) the few disclosures that generally identified online betting as one driver of QIWI's business made clear that other factors were also at play (*id.* at 22); and (4) QIWI explicitly warned investors that its services had been, and could be, used for illicit activity, including illegal online gambling. (*Id.*) Plaintiff's claims thus fail for the reasons already described in Defendants' Motion and herein.

### E. Numerous Statements Are Protected As Opinions Or Forward-Looking

Plaintiff also does not rebut Defendants' argument that numerous challenged statements are (1) non-actionable opinions under *Omnicare* (*see* MTD 22-24); and/or (2) protected by the PSLRA's safe harbor and the bespeaks caution doctrine. (*id.* at 24-26.) In addressing both issues, Plaintiff once again merely repackages the same meritless points already dispensed with above, including that "Defendants knew of, but concealed," that QIWI "was embroiled in a new CBR

---

[7] Plaintiff's cases involved statements that omitted *specific* and *closely related* misconduct. *See, e.g., DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 444 (S.D.N.Y. 2018) (upholding claim based on construction company's statement that it procured competitive bids due to legitimate factors like engineering capabilities where company failed to disclose that it won many bids through illegal bribery scheme); *In re VEON Ltd. Sec. Litig.*, No. 15-cv-08672 (ALC), 2017 WL 4162342, at *1-2, *6 (S.D.N.Y. Sept. 19, 2017) (upholding claim based on telecommunications company's statement that its growing revenue in Uzbekistan was due to legitimate factors like product quality and efficient marketing where company failed to disclose that growth was also due to illegal bribes paid to the daughter of Uzbekistan's president). In addressing this issue in the Opposition, Plaintiff does not even identify a particular statement, much less specific and closely related misconduct (Opp'n 15 n.9), and, as noted above, fails to dispute Defendants' arguments demonstrating that these claims fail for independent reasons.

audit." (Opp'n 17; *see id.* at 18 (same), 19 (arguing that Defendants' cautionary language was insufficient because it described hypothetical risks).) These arguments should be rejected.[8]

### F. Multiple Statements Represent Non-Actionable Puffery

Finally, the Opposition does not rebut the conclusion that various statements are also "too general to cause a reasonable investor to rely upon them." *Lachman*, 487 F. Supp. 3d at 130-31 (citation omitted). (MTD 26.) In a one-sentence footnote response, Plaintiff asserts that "certain statements" do not amount to puffery, but fails to cite a single specific statement or a specific reason why it might be actionable. (Opp'n 17 n.10.) This is wholly insufficient.

## II. Plaintiff Fails To Plead a Strong Inference of Scienter

The CAC independently should be dismissed for failure to allege a "strong inference" of scienter. (MTD 27-30.) Plaintiff's only theory of a motive and opportunity to commit fraud is that two of the seven Individual Defendants attempted to—but did not—sell shares in a July 2020 secondary offering. (Opp'n 22-23.) These allegations concede that five of the Individual Defendants did not play any role in this offering, and the CAC does not plead any stock sales by any Individual Defendant during the Class Period. (*See* MTD 27-28.) As a result, Plaintiff utterly fails to allege any "concrete and personal benefit" from the alleged fraud—a fatal deficiency. *See Lachman*, 487 F. Supp. 3d at 136.[9]

---

[8] Plaintiff also contends that three statements contained severable forward-looking and non-forward-looking components. (*See* Opp'n 18 & n.11 (citing CAC ¶¶ 219-21).) But even if this were accurate, there are no allegations suggesting that any aspect of the cited statements—forward-looking or not—was false or misleading.

[9] Plaintiff's cases on this point once again either support Defendants or are inapposite. *See Emps.' Ret. Sys. of Gov't of V.I. v. Blanford*, 794 F.3d 297, 308 (2d Cir. 2015) (plaintiff alleged motive based on "*sales* of [company] stock *at opportune moments* throughout the Class Period *at significant personal gain*" (emphasis added)); *Zanghi v. Ritella*, No. 19 Civ. 5830 (NRB), 2021 WL 4392756, at *2, *12-13 (S.D.N.Y. Sept. 24, 2021) (plaintiff alleged motive where defendant presented materially false information in order to receive a $15,000 commission for recruiting an investor); *Martinek v. AmTrust Fin. Servs., Inc.*, No. 19 Civ. 8030 (KPF), 2020 WL 4735189, at *4, 17 (S.D.N.Y. Aug. 14, 2020) (plaintiff alleged motive where defendants negotiated and entered into merger agreement in order "to squeeze out minority stockholders to acquire a highly profitable business, at a time when [the company's] common stock was trading at historic lows, and in the process to extinguish existing derivative securities fraud claims exposing each of the [defendants] to personal liability").

Plaintiff's allegations of conscious misbehavior or recklessness are just as threadbare, and cannot provide a "correspondingly greater" basis to infer scienter as to any, much less each, Defendant. *ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198-99 (2d Cir. 2009). Without citing any allegations in the CAC, Plaintiff asserts that Defendants knew about the "information leading to the [CBR's] sanctions" because they "provided the CBR with the documents evidencing [QIWI's] violative practices." (Opp'n 24.) But even if this had been alleged in the CAC, it does not come close to pleading facts with the requisite particularity. Plaintiff has not alleged *what* specific information was contained in these supposed "documents," *why* that information contradicted a particular challenged statement, *which* Individual Defendant(s) received those documents, and *when* the Individual Defendant(s) received them. This is nowhere near the type of particularized pleading required by the PSLRA. *See Canez v. Intelligent Sys. Corp.*, No. 19-CV-3949 (RPK) (CLP), 2021 WL 3667012, at *10 (E.D.N.Y. Aug. 18, 2021) (Kovner, J.) ("'[W]here plaintiffs contend defendants had access to contrary facts, they must *specifically identify* the reports or statements containing this information.'" (emphasis added)); *see also* 15 U.S.C. § 78u-4(b)(2)(A) (scienter must be alleged "with particularity").

Plaintiff's remaining arguments fare no better. Plaintiff asserts that (1) because "the Individual Defendants spoke knowledgeably to investors about [QIWI's] betting-related operations" and other topics, they "should have educated themselves about the Company's violative operations"; (2) "[t]o the extent [the Individual Defendants] somehow were unaware of the violative operations or the risks of the CBR audit, they recklessly failed to conduct proper diligence"; and (3) "the Individual Defendants refused to see the obvious or investigate the doubtful." (Opp'n 26-28.) These conclusory assertions (which are not pled in the CAC) are woefully inadequate. Even if negligence were sufficient in this context—and it is not (*see* MTD

9

28)—Plaintiff has not specifically identified the "violative operations" at issue, much less specifically alleged when and why any Individual Defendant should have been aware of them or what "obvious" facts were overlooked.

Plaintiff's scienter arguments boil down to the untenable and often-rejected tactic of pleading that Defendants *must have* known of the alleged fraud based solely on their positions within the company. (*E.g.*, Opp'n 24 n.14, 25.) This tactic cannot survive dismissal. *See Venkataraman v. Kandi Techs. Grp., Inc.*, No. 20 Civ. 8082 (LGS), 2021 WL 4952260, at *4 (S.D.N.Y. Oct. 25, 2021) (rejecting as "boilerplate" and "lacking any specific factual content" allegation that defendants were aware of undisclosed adverse facts "[b]ecause of their positions within the [c]ompany"); *Marcu*, 2020 WL 4016645, at *7 ("[A] defendant's position does not, without more, support a conclusion that the defendant had access to information contradicting an alleged misrepresentation.").[10]

### III. Plaintiff Fails to State a Claim For Control Person Liability

Plaintiff fails to plead a primary violation by QIWI or culpable participation by the Individual Defendants; thus its Section 20(a) claim fails. *Lachman*, 487 F. Supp. 3d at 139.

### CONCLUSION

For the foregoing reasons, the CAC should be dismissed in its entirety with prejudice.

---

[10] Plaintiff erroneously invokes the so-called "core operations" doctrine. (Opp'n 28-29.) The core operations doctrine cannot "independently establish scienter" and typically applies only where, unlike here, "the operation in question constitute[s] nearly all of a company's business." *In re Adient plc Sec. Litig.*, No. 18-CV-9116 (RA), 2020 WL 1644018, at *29 (S.D.N.Y. Apr. 2, 2020) (citations omitted). Further, Plaintiff's corporate scienter argument is based entirely on its unsupported assertions of knowledge of "improper transactions" (Opp'n 20) and does not explain "how or why the Court should find corporate scienter based on another executive's statements." *In re Adient*, 2020 WL 1644018, at *30.

Dated: New York, New York
November 1, 2021

/s/ Alexander C. Drylewski
Alexander C. Drylewski
William J. O'Brien
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Phone: (212) 735-3000
Fax: (212) 735-2000
alexander.drylewski@skadden.com
william.obrien@skadden.com

*Attorneys for Defendant QIWI plc*
 *and Andrey Protopopov*