UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

IN   RE   QIWI   PLC   SECURITIES
LITIGATION,

                              **MEMORANDUM AND ORDER**
                              20 CV 6054 (RPK) (CLP)



-------------------------------------------------------------X

**POLLAK**, Chief United States Magistrate Judge:

On December 11, 2020, Dale H. Ochakoff commenced this class action against

defendants Qiwi PLC ("Qiwi"), Boris Kim ("Kim"), Sergey Solonin ("Solonin"), Alexander

Karavaev ("Karavaev"), and Varvara Kiseleva ("Kiseleva"), alleging violations of the federal

securities laws under the Securities and Exchange Act of 1934, as amended by the Private

Securities Litigation Reform Act of 1995 ("PSLRA"), in connection with the publicly traded

securities of Qiwi between March 28, 2019 and December 9, 2020.  On May 20, 2021, this Court

ordered the consolidation of two related class actions[1] and appointed Moset International

Company Limited ("Moset") as lead plaintiff.  On July 9, 2021, plaintiff filed a Consolidated

Amended Class Action Complaint for Violations of the Federal Securities Laws against Qiwi,

Kim, Solonin, Karavaev, Kisleva, Andrey Protopopov ("Protopopov"), Vladislav Poshmorga

("Poshmorga"), and Pavel Korzh ("Korzh").[2]

---

[1] On January 4, 2021, Nicholas Petruzzi filed a class action complaint, alleging violations
of the Federal Securities Laws against Qiwi, Kim, Solonin, Karavaev and Kiseleva. No. 2:21 CV
0021.

[2] In the Amended Complaint, plaintiff expanded the class period to November 14, 2018

Currently pending before this Court is Lead Plaintiff Moset's unopposed Motion for Alternative Service ("Pl.'s Mem."[3]).  For the reasons set forth below, the Court denies plaintiff's request without prejudice to renew upon the provision of additional information to the Court.

PROCEDURAL BACKGROUND

In support of the motion for alternative service, plaintiff has submitted the Declaration of Ivy T. Ngo, Counsel to the firm of Roche Freedman LLP, and counsel for plaintiff Moset, dated February 25, 2022 ("Ngo Decl.").  According to the Ngo Declaration, plaintiff has conducted a diligent investigation to identify addresses for service on defendants Karavaev, Kiseleva, Poshmorga, and Korzh (collectively, the "Unserved Defendants").  (Ngo Decl. ¶ 2; see also Pl.'s Mem. at 4).  Plaintiff asserts that despite its diligent efforts, including searches of "corporate records, social media accounts, websites, blog posts, interviews, government registries, business addresses, and residential addresses both in the United States and aboard [sic]," plaintiff has been unable to serve the Unserved Defendants.  (Ngo Decl. ¶ 2).

"Through its investigation," plaintiff has determined that defendant Karavaev is currently the Chief Financial Officer for Nexters Inc. ("Nexters").  (Id. ¶ 20).  Nexters is incorporated in the British Virgin Islands, publicly traded on Nasdaq, with its principal executive offices located at 55, Griva Digeni, 3101, Limassol, Cyprus.  (Id. ¶ 21).  Nexters also lists Puglisi & Associates as its registered agent, with offices located at 850 Liberty Avenue, Suite 204, Newark, DE 19711.  (Id. ¶ 21).  Nexters's counsel is listed in the company's SEC filings as J. David Stewart, Esq. of Latham & Watkins, LLP.  (Id., Ex. I).

According to plaintiff's counsel, an email was sent to Mr. Stewart on October 13, 2021,

to December 9, 2020.

[3] Citations to "Pl.'s Mem." refer to plaintiff's Memorandum of Law filed on February 25, 2022 in support of its Motion for Leave for Alternative Service, ECF No. 52.

asking if he would accept service on behalf of Karavaev or provide a current mailing address for Karavaev.  (Id. ¶ 22, Ex. J).  In the email, Ms. Ngo stated that "[i]f we do not hear from you . . . we will proceed with service through other means."  (Id.)  Mr. Stewart did not respond to the email.  (Id.)  On October 21, 2021, a process server attempted service on Karavaev by serving Nexters's registered agent Puglisi & Associates.  (Id. ¶ 23; ECF No. 49).  When counsel for Qiwi, Skadden Arps,[4] questioned the propriety of this method of service, understanding Puglisi to be "authorized to accept service for the Company only and not Mr. Karavaev personally" (Id. ¶ 24, Ex. K), plaintiff served a "Request for Service Aboard [sic] of Judicial or Extrajudicial Documents," pursuant to the Hague Convention for the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"), for service upon Karavaev at Nexters's office in Cyprus.  (Id. ¶ 26, Ex. M).  On January 27, 2022, plaintiff's counsel received a letter from the Ministry of Justice and Public Order in Cyprus, denying the Hague Request.  (Id. ¶ 28, Ex. O).[5]

With respect to defendant Poshmorga, plaintiff claims that Poshmorga is currently the Chief Investment Officer at Social Discovery Ventures ("SDVentures"), with offices at: 1) 55 East 59th Street, New York, N.Y., and 2) Business Center "TRIO," 8 Marta str., d. 1, st. 12, Moscow, Russia.  (Id. ¶ 17, Ex. F).  Plaintiff's process server attempted to serve Poshmorga on

---

[4] The law firm of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") has appeared as counsel and accepted service on behalf of Qiwi, Kim, Solonin, and Protopopov.  (Ngo Decl. ¶¶ 6, 12, 14, 15).  Skadden indicated that the Unserved Defendants were no longer employed by Qiwi and therefore were not represented by Skadden.  (Id. ¶ 14).  Skadden informed plaintiff's counsel that their clients were not willing to disclose any information regarding the personal addresses of the Unserved Defendants.  (Id.)

[5] Plaintiff claims that it sent the Hague Request, along with payment, to the Central Authority of Cyprus, and despite the fact that the FedEx was signed for on November 24, 2021, the request was rejected.  The explanation given for rejecting the request was "[s]ince the documents were not sent threw [sic] the Central Authority."  (Id. ¶¶ 27–28, Exs. M, N, O).

October 14 and 15, 2021 at the New York address but was informed by building security that they had never heard of either the company SDVentures or Poshmorga. (Id. ¶ 18). According to plaintiff's counsel, service upon Poshmorga at the address in Moscow through the Hague Convention is not possible because Russia has unilaterally suspended all judicial cooperation with the United States and refuses to serve letters of request for service of process. (Id. ¶ 19). Thus, service on Poshmorga at either of these addresses has proved unsuccessful.

With respect to defendant Kiseleva, plaintiff indicated that Kiseleva currently serves as Director of Capital Markets at Cian (or Cyan) Group, with its primary office located in Moscow. (Id. ¶ 29, Ex. P). Since Russia has suspended cooperation with the United States and refuses to effect service in connection with requests from the United States, plaintiff is unable to serve Kiseleva through the Hague Convention. (Id. ¶ 30).

Finally, plaintiff retained a private investigator to search for defendant Korzh. (Id. ¶ 31). The investigator believes that Korzh is residing in Moscow. (Id. ¶ 32). Like defendants Kiseleva and Poshmorga, plaintiff asserts that it is unable to serve Korzh through the Hague Convention. (Id. ¶ 33).

Plaintiff indicates that it has identified alternative means for contacting the Unserved Defendants through company email addresses, personal and/or company social media accounts, and/or affiliated corporate websites. (Id. ¶ 34). Plaintiff further indicates that it is prepared to utilize RPost products to confirm that the proposed email accounts are valid and capable of receiving service emails. (Id.) Plaintiff further indicates that counsel has created a webpage dedicated exclusively to the publication of the requisite documents to notify the Unserved Defendants of the pendency of the litigation. The webpage is located at https://www.qiwisecuritieslitigation.com/. (Id. ¶ 35; Pl.'s Mem. at 6).

Plaintiff seeks an Order authorizing service upon the Unserved Defendants through: 1) social media accounts; 2) corporate email addresses; 3) corporate portals; and/or 4) publication of the requisite documents to https://www.qiwisecuritieslitigation.com/. (Pl.'s Mem. at 15–17). Although the defendants who have been served do not have standing to object, see Farrell v. Burke, 449 F.3d 470, 494 (2d Cir. 2006); In re Graña y Montero S.A.A. Sec. Litig., No. 17 CV 1105, 2019 WL 259778, at *3 (E.D.N.Y. Jan. 9, 2019), they have submitted a letter dated March 11, 2022, indicating that they have no objection to plaintiff's motion. (ECF No. 56).

DISCUSSION

I.    Legal Standards

Rule 4 of the Federal Rules of Civil Procedure prescribes the manner in which service of process must be effectuated in order to subject a defendant to the court's jurisdiction. See Fed. R. Civ. P. 4. If a defendant does not receive service pursuant to Rule 4 and does not waive formal service, the court lacks personal jurisdiction over the defendant. See Black v. Vitello, 841 F. App'x 334, 335 (2d Cir. 2021); see also Michaelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 709 F. Supp. 1279, 1282 (S.D.N.Y. 1989) (stating that proper service on a defendant of a summons and complaint is a prerequisite to personal jurisdiction). "Neither actual notice, nor simply naming the person in the caption of the complaint will subject defendants to personal jurisdiction if service was not made in substantial compliance with Rule 4." McNeil v. New York State Off. of Substance Alcoholism & Substance Abuse Servs., No. 14 CV 2379, 2015 WL 5518656, at *3 (E.D.N.Y. Aug. 14, 2015) (quoting Ogunbayo v. Montego Medical Consulting P.C., No. 11 CV 4047, 2012 WL 6621290, at *2 (E.D.N.Y. Sept. 18, 2012), report and recommendation adopted as modified on other grounds, 2012 WL 6625921 (E.D.N.Y. Dec.19, 2012)); accord Jackson v. Hayakawa, 682 F.2d 1344, 1347 (9th Cir. 1982).

A.      Domestic Service and Alternative Service

Rule 4 provides that an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). In New York, where this Court is located, the New York Civil Practice Law and Rules ("CPLR") permit service "in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section." N.Y. CPLR § 308(5).[6] "Although the impracticability standard is not capable of easy definition, [a] showing of impracticability under CPLR § 308(5) does not require proof of actual prior attempts to serve a party under the methods outlined pursuant to subdivisions (1), (2) or (4) of CPLR 308." Safadjou v. Mohammadi, 105 A.D.3d 1423, 1424, 964 N.Y.S.2d 801, 802 (4th Dep't 2013) (internal citations and quotation marks omitted) (alteration in original) (quoting Astrologo v. Serra, 240 A.D.2d 606, 606, 659 N.Y.S.2d 481, 482 (2d Dep't 1997); and Franklin v. Winard, 189 A.D.2d 717, 717, 592 N.Y.S.2d 726, 727 (1st Dep't 1993)). What circumstances make service 'impracticable' are case-specific. Id.

New York courts regularly find service impracticable where "plaintiff has been unsuccessful in obtaining either a business or home address for defendant, even though she has diligently sought that information." Baidoo v. Blood-Drazku, 48 Misc. 3d 309, 312, 5 N.Y.S.3d 709, 713 (Sup. Ct. N.Y. Cnty. 2015); accord Snyder v. Alternate Energy, Inc., 19 Misc. 3d 954, 959, 857 N.Y.S.2d 442, 446-47 (Civ. Ct. N.Y. Cnty. 2008). Moreover, unsuccessful attempts to

---

[6] Paragraphs one, two, and four permit service by: (1) "delivering the summons within the state to the person to be served," (2) "delivering the summons to a person of suitable age and discretion at the actual place of business, dwelling, or usual place of abode and by either mailing the summons to the person to be served at his or her last known residence . . . or actual place of business," or (4) "by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state" and by either mailing the summons to the last known residence or the actual place of business. N.Y. C.P.L.R. §§ 308 (1), (2), (4).

6

serve a defendant are strong evidence of impracticability.  Hollow v. Hollow, 193 Misc. 2d 691, 694, 747 N.Y.S.2d 704, 707 (Sup. Ct. Oswego Cnty. 2002); see also Madu, Edozie, & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 117 (S.D.N.Y. 2010) (holding that "[i]n general, a plaintiff 'must make some showing that the other prescribed methods of service cannot be made'" (quoting SEC v. Nnebe, No. 01 CV 5247, 2003 WL 402377, at *3 (S.D.N.Y. Feb. 21, 2003))).  Finally, to satisfy due process, any alternative means of service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); see also Wei Su v. Sotheby's, Inc., No. 17 CV 4577, 2018 WL 4804675, at *3 (S.D.N.Y. Oct. 3, 2018); SEC v. Anticevic, No. 05 CV 6991, 2009 WL 361739, at *4 (S.D.N.Y. Feb. 13, 2009) (holding "[c]onstitutional notions of due process require that any means of service be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'" (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. at 314)).

Some alternative means of service authorized by courts when service pursuant to CPLR § 308 is impracticable include service by email, service by social media, and even service on a family member.  See, e.g., Ferrarese v. Shaw, 164 F. Supp. 3d 361, 367 (E.D.N.Y. 2016) (authorizing service by email, Facebook, and ordering service by mail on defendant's sister); accord Korea Deposit Ins. Corp. v. Jung, 59 Misc. 3d 442, 446, 68 N.Y.S.3d 625, 629 (Sup. Ct. N.Y. Cnty. 2017) (holding that "[u]nder New York law, service by email on foreign defendants is also a permissible means of service, consistent with due process and not prohibited by the Hague Convention, where the methods prescribed by or compatible with the law of defendants' country have proved ineffective").

7

B.        Foreign Service and Alternative Means

The Federal Rules contemplate three possible avenues to effect service outside of the United States: where the means of service are internationally agreed to, where they are not, and where they are court-ordered.  Fed. R. Civ. P. 4(f).  "[T]here is no hierarchy among the subsections in Rule 4(f)."  Kaneka Corp. v. Purestart Chem Enter. Co., No. 16 CV 4861, 2017 WL 11509784, at *2 (E.D.N.Y. Oct. 17, 2017) (quoting Advanced Aerofoil Techs., AG v. Todaro, No. 11 CV 9505, 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012)).

Rule 4(f)(1) provides that a foreign party may be served:

> by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents[.]

Fed. R. Civ. P. 4(f)(1).  In this case, both Cyprus and Russia are parties to the Hague Convention. See Contracting Parties to the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, HCCH, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last visited Sep. 30, 2022).  The Convention permits service on an entity in another country through that country's designated "Central Authority." See Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters arts. 2–6, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (hereinafter "Hague Convention").  Notwithstanding a country's designation of a "Central Authority," the Hague Convention does not restrict other means of process, such as through diplomatic channels, consular channels, or postal channels.  Id. arts. 8–10.  The Hague Convention only applies when the address of a defendant is known.  Id. art. 1; accord Apaville LLC v. First Citizens Bank, No. 20 CV 80705, 2020 WL 13348682, at *2 (S.D.

8

Fla. Aug. 11, 2020) (holding that "[b]ecause the Plaintiffs have failed to provide a Russian address for Strigin, the Hague Convention cannot apply to—or prohibit service upon—him").

In this case, plaintiff has identified a corporate address for defendant Karavaev in Cyprus, corporate addresses for defendants Kiseleva and Poshmorga in Russia, and a possible residential address in Russia for defendant Korzh.  While there is no indication that service cannot be effectuated through the Central Authority in Cyprus,[7] the United States Department of State maintains that Russia has refused to cooperate when requests to serve process in Russia are made from the United States.[8]

Article 10(a) of the Hague Convention states that, subject to the objection of a signatory state, the Convention is not intended to prevent a party from sending judicial documents by mail to a foreign party, nor does it inhibit the freedom of judicial officers or officials, or persons interested in a judicial proceeding to effect service directly through a judicial officer, official, or other competent person in the foreign jurisdiction.  See Hague Convention, arts. 10(a)–(c).  The Second Circuit has held that this clause permits foreign service by mail where the signatory countries have not registered an objection to Article 10(a).  Ackermann v. Levine, 788 F.2d 830, 838–39 (2d Cir. 1986) (noting that "[t]he reference to the freedom to send judicial documents by postal channels . . . would be superfluous unless it was related to the sending of such documents

---

[7] Cyprus Judicial Assistance Information, U.S. Dep't of State, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Cyprus.html (last visited Sep. 30, 2022).

[8] Russia Judicial Assistance Information, U.S. Dep't of State, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/RussianFederation.html (last visited Sep. 30, 2022) (explaining that "[i]n July 2003, Russia unilaterally suspended all judicial cooperation with the United States in civil and commercial matters" and that Russia "refuses to serve letters of request from the United States for service of process presented under the terms of the 1965 Hague Service Convention or to execute letters rogatory requesting service of process transmitted via diplomatic channels").

for the purpose of service") (internal citations and quotations omitted); see also EOI Corp. v. Medical Mktg. Ltd., 172 F.R.D. 133, 137 (D.N.J. 1997) (determining that "service by mail is consistent with the overriding purpose of the Convention to develop a comprehensive system to effectuate proper service of process in other countries") (citing R. Griggs Grp. Ltd. v. Filanto Spa, 920 F. Supp. 1100, 1104–05 (D. Nev. 1996)).  While Cyprus did not lodge an objection to Article 10,[9] Russia has objected.[10]

Where there is no internationally agreed upon means of effecting service or the international agreement does not specify the means of service allowed, Rule 4(f)(2) authorizes service in a foreign country by means reasonably calculated to give notice:

> (a) as prescribed by the foreign county's law for service in that country in an action in its courts of general jurisdiction;
> (b) as the foreign authority directs in response to a letter rogatory or letter of request; or
> (c) unless prohibited by the foreign country's law by:
>    i. delivering a copy of the summons and of the complaint to the individual personally; or
>    ii. using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt . . .

Fed. R. Civ. P. 4(f)(2).

The third avenue available to plaintiffs to effectuate service on a defendant in a foreign country is Rule 4(f)(3), which permits service in a foreign county "by other means not prohibited by international agreement, as the court orders."  Id. at 4(f)(3).  "Service of process under Rule

---

[9] See The Government of Cyprus' Declarations to the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, HCCH, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=29&disp=resdn (last visited Sep. 21, 2022).

[10] See The Russian Federation's Declarations to the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, HCCH, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=418&disp=resdn (last visited Sep. 21, 2022).

4(f)(3) is neither a last resort nor extraordinary relief.  It is merely one means among several which enables service of process on an international defendant." Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. at 115 (quoting KPN B.V. v. Corcyra D.O.O., No. 08 CV 1549, 2009 WL 690119, at *1 (S.D.N.Y. Mar. 16, 2009)).  Any method authorized under Rule 4(f)(3) must still comport with constitutional due process.  Id.  "A court is 'afforded wide discretion in ordering service of process under Rule 4(f)(3).'"  In re South African Apartheid Litig., 643 F. Supp. 2d 423, 433 (S.D.N.Y. 2009) (quoting SEC v. Anticevic, 2009 WL 361739, at *3).

In Mullane v. Central Hanover Bank & Trust Company, the Supreme Court recognized that "in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." 339 U.S. at 317; accord SEC v. Tome, 833 F.2d 1086, 1094 (2d Cir. 1987); see also In re Bibox Grp. Holdings Ltd. Secs. Litig., No. 20 CV 2807, 2020 WL 4586819, at *2 (S.D.N.Y. Aug. 10, 2020).  However, "before ordering alternative service, courts must ensure that the means of service 'comports with constitutional notions of due process.'" Wei Su v. Sotheby's, Inc., 2018 WL 4804675, at *3 (quoting Stream SICAV v. Wang, 989 F. Supp. 2d 264, 278 (S.D.N.Y. 2013)).

Under Rule 4(f)(3), district courts in this circuit have frequently authorized service by email. Group One Ltd. v. GTE GmbH, 523 F. Supp. 3d 323, 343 (E.D.N.Y. 2021) (holding that "[c]ourts in the Second Circuit have generally found that email is not a postal channel and that service by email is authorized if the signatory country has not explicitly objected to service by electronic means") (collecting cases); accord Safadjou v. Mohammadi, 105 A.D.3d at 1425, 964 N.Y.S.2d at 803–04 (holding that "[a]lthough service of process by email 'is not directly

11

authorized by either the CPLR or the Hague Convention, it is not prohibited under either state or federal law, or the Hague Convention' and, indeed, 'both New York courts and federal courts have, upon application by plaintiffs, authorized [e]mail service of process as an appropriate alternative method when the statutory methods have proven ineffective'") (internal citation omitted) (quoting Alfred E. Mann Living Trust v ETIRC Aviation S.A.R.L., 78 A.D.3d 137, 141, 910 N.Y.S. 2d 418, 422 (1st Dep't 2010))).  In Bibox Group Holdings Ltd. Securities Litigation, the court authorized service through means including email, noting that "[s]ervice through electronic methods such as email is more likely to provide notice where defendants are creatures of the internet who do business exclusively online."  2020 WL 4586819, at *2; see also Philip Morris USA Inc. v. Veles Ltd., No. 06 CV 2988, 2007 WL 725412, at *3 (S.D.N.Y. Mar. 12, 2007).

Courts have also approved alternative service by social media, by registered agent or attorney, and by publication.  See, e.g., In re Bibox Grp. Holdings Ltd. Sec. Litig., 2020 WL 4586819, at *3;  Wei Su v. Sotheby's Inc., 2018 WL 4804675, at *4–5 (authorizing service by email, fax, and mail on defendant's attorney who had prior communications with plaintiff related to the case and ordering service by publication in Chinese and English in two different newspapers in Taiwan); FTC v. PCCare 247 Inc., No. 12 CV 7189, 2013 WL 841037 at *6 (S.D.N.Y. Mar. 7, 2013) (finding that plaintiff had demonstrated a "high likelihood" that service via personal and corporate email accounts and personal social media accounts identified as relating to the defendants would reach defendants).  Courts have even approved service on a high-level employee's employer and the employer's counsel. See, e.g., Stream SICAV v. Wang, 989 F. Supp. 2d at 279 (noting "[c]ourts have sensibly held that service on a high-level employee's corporate employer, or counsel for that employer, is 'reasonably calculated' to apprise

the employee of the pendency of the action and therefore comports with due process.")); In re

GLG Life Tech Corp. Sec. Litig., 287 F.R.D. at 267; see also In re BRF S.A. Sec. Litig., No. 18

CV 2213, 2019 WL 257971, at *7 (S.D.N.Y. Jan. 18, 2019) (holding that "[s]ervice of process

made at a defendant's place of employment can be consistent with due process").

II.     Analysis

Prior to authorizing service under Rule 4(f)(3), plaintiff must establish that the alternative

means it proposes are not barred by international agreement and the means proposed satisfy

notions of due process.

As an initial matter, there is no exhaustion requirement under Rule 4(f)(3).[11]  See

Paushok v. Ganbold, 487 F. Supp.3d 243, 245 (S.D.N.Y. 2020); Stream SICAV v. Wang, 989 F.

Supp. 2d at 278; accord Group One Ltd. v. GTE GmbH, 523 F. Supp. 3d at 341.  However, while

plaintiff is not required to exhaust other methods of service before seeking the Court's

authorization for alternative service under Rule 4(f)(3), here plaintiff details its efforts to serve

each of the Unserved Defendants.  (Pl.'s Mem. at 4–6).

Plaintiff first asserts that Karavaev, Kiseleva, and Korzh were all executives or directors

of Qiwi at the time the Ochakoff action was filed and therefore have knowledge of the litigation.

(Pl.'s Mem. at 12 (citing ECF No. 30 ¶¶ 28, 30-31; ECF No. 5); see id. (stating "[t]hat any of the

---

[11] The Court recognizes that before authorizing service pursuant to Rule 4(f)(3), some courts have required:  "(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary.'"  In re Graña y Montero S.A.A. Sec. Litig., 2019 WL 259778, at *4 (quoting In re GLG Life Tech Corp. Sec. Litig., 287 F.R.D. 262, 266 (S.D.N.Y. 2012)).  However, this Court agrees with the reasoning in Paushok v. Ganbold, 487 F. Supp. 3d 243, 245 (S.D.N.Y. 2020) (comparing the language of Rule 4(f)(3) with CPLR 308(5) and finding "service of process under Rule 4(f)(3) is neither a last resort nor extraordinary remedy") (citing cases).

Unserved Defendants are not aware of this litigation strains credulity")).[12]  Moreover, plaintiff

has attempted to serve each of the defendants according to the traditional methods of service, but

has been unsuccessful, or has demonstrated that such attempts would be futile. Thus, plaintiff has

established that it "reasonably attempted to effectuate service on the defendant, and . . . that the

court's intervention is necessary" to order service by alternative means.  In re Graña y Montero

S.A.A. Sec. Litig., 2019 WL 259778, at *4 (quoting In re GLG Life Tech Corp. Sec. Litig., 287

F.R.D. 262, 266 (S.D.N.Y. 2012)).

Plaintiff attempted to serve defendant Karavaev by emailing a copy of the Complaint and

Summons to Nexters's listed counsel, personally serving Nexters's domestic agent, and by

service upon Cyprus's Central Authority, pursuant to the Hague Convention, although the

Central Authority rejected this attempt.  (Ngo Decl. ¶¶ 22–23, 26–28).

Plaintiff attempted to serve defendant Poshmorga at the New York address listed for

SDVentures on its website.  However, plaintiff was informed that neither SDVentures nor

Poshmorga were known at that address.  (Ngo Decl. ¶¶ 17–18).  Plaintiff has also demonstrated

that service pursuant to the Hague Convention on Poshmorga and Kiseleva through their

corporate addresses and on Korzh through his possible residential address in Russia is likely to

be futile.  As noted, while Russia is a party to the Hague Convention, it not only objects to

service by mail as set forth in Article 10(a), but it has in effect ceased cooperation with requests

---

[12] The Court thinks it is questionable whether these three defendants have actual notice that they themselves are parties to this litigation.  The docket report reflects that Summonses were issued for defendants Karavaev and Kiseleva on December 14, 2020, at the time the initial Complaint in the Ochakoff action was filed.  (ECF No. 4).  Qiwi was served on December 21, 2020.  (ECF No. 5).  Defendant Korzh was not named as a defendant in the original action.  A Summons was issued for defendant Korzh on July 12, 2021, at the time the Amended Complaint was filed.  (ECF No. 31).  There appears to be some question as to whether the defendants were employed by Qiwi at the time of the filing of the Complaint, at the time service was attempted through Qiwi, or when their Summonses were issued.  See infra notes 14, 17, 23.

for judicial process from the United States.[13]  "Because there is no reason to believe that service would be effective if plaintiffs were required to serve [a Russian defendant] in accordance with the Hague Service Convention procedures, substituted service pursuant to Rule 4(f)(3) is appropriate."  Arista Recs. LLC v. Media Servs. LLC, No. 06 CV 15319, 2008 WL 563470, at *2 (S.D.N.Y. Feb. 25, 2008); see also Nuance Commc'n, Inc. v. Abbyy Software House, 626 F.3d 1222, 1239 (Fed. Cir. 2010) (explaining that the Advisory Committee Note to Rule 4 considers the use of Rule 4(f)(3) appropriate when signatories to the Hague Service Convention refuse to comply with the Convention).  Thus, plaintiff has clearly demonstrated that the traditional means of service are not practical, and the Court's intervention is warranted.

Generally, plaintiff seeks to use personal social media, corporate email addresses, corporate social media, corporate contact portals, and a website created by plaintiff to effectuate service.  Courts have held that service by email, social media, and publication in Cyprus and Russia are not prohibited by international agreement.  See, e.g., Apaville LLC v. First Citizens Bank, 2020 WL 13348682, at *2 (noting that the Hague Convention does not prohibit service by email or website publication, "[n]or, for that matter, does any other treaty to which [Cyprus, Russia, and the Czech Republic] have joined"); ShelterZoom Corp v. Goroshevsky, No. 19 CV 10162, 2020 WL 4252722, at *2 (S.D.N.Y. July 23, 2020) (holding "as [the court] has previously concluded, that 'service via email for a defendant residing in Russia may qualify as an alternative means of service under Rule 4(f)(3)" (quoting AMTO, LLC v. Bedford Asset Mgmt., LLC, No. 14 CV 9913, 2015 WL 3457452, at *7 (S.D.N.Y. June 1, 2015))); Newmont USA Ltd. v. Imatech Sys. Cyprus Pty Ltd., No. 3:18 CV 575, 2019 WL 3219144, at *3 (D. Nev. July 17, 2019) (finding that "Cyprus is a signatory of the Hague Convention and has not objected to

---

[13] See supra Section I.B.

Article 10 of the Hague Convention, so alternative service by email is not prohibited by international agreement"); see also FTC v. PCCare 247 Inc., 2013 WL 841037, at *4 (finding "[n]umerous courts have held that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10" and "[s]ervice by Facebook is clearly outside the scope of Article 10").

Thus, while the plaintiff's inability to serve these Unserved Defendants warrants Court intervention and the methods of service proposed by plaintiff do not violate international law, the Court must still consider whether the proposed means are reasonably calculated to provide notice and comport with constitutional notions of due process.

A.     Defendant Karavaev[14]

Plaintiff seeks to serve defendant Karavaev through a personal LinkedIn Profile; email addresses associated with Nexters; Nexters's Twitter, LinkedIn, and Facebook accounts; and publication to a website.[15]  The Court finds that based on the information currently before this

---

[14] Plaintiff argues in its brief that defendant Karavaev was already served in this action, because plaintiff served defendant Qiwi on December 21, 2020 and served defendant Karavaev's current employer on October 25, 2021.  (Pl.'s Mem. at 12; ECF Nos. 5, 49).  On both occasions, service was accomplished domestically and therefore would be controlled by Fed. R. Civ. P. 4(e) and not 4(f) or the Hague Convention.  See In re GLG Life Tech Corp. Sec. Litig., 287 F.R.D. at 267.  While, as previously discussed, New York authorizes actual service on a place of business, it requires follow-up service by mail.  See N.Y. C.P.L.R. §§ 308 (2).  Assuming arguendo that plaintiff properly delivered the Summons and Complaint to Karavaev's actual places of business at the time it served the registered agents of Qiwi and Nexters, plaintiff has not provided any evidence that a copy of the pleadings was subsequently mailed to Karavaev as New York law requires.  Moreover, according to the LinkedIn profile that plaintiff intends to use to serve Karavaev, Karavaev was no longer working at Qiwi in December 2020, when service on him was attempted there.  In the absence of additional evidence, there is an issue as to whether defendant Karavaev was served properly at either of these corporate addresses.

[15] Specifically, plaintiff proposes serving "Karavaev through (i) his LinkedIn Profile: https://cy.linkedin.com/in/alexander-karavaev-7050a215; (ii) the email addresses associated with the company Karavaev currently serves as CFO for, Nexters, including:  (a) r.safiyulin@nexters.com; and (b) aa@nexters.com; (iii) the social media accounts of Nexters, including: (a) Facebook:  https://www.facebook.com/nexters; (b) LinkedIn:

16

Court, these alternative means are not reasonably calculated to provide notice to defendant Karavaev.

"Service by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant." Makina ve Kimya Endustrisi A.S. v. A.S.A.P. Logistics Ltd., No. 22 CV 3933, 2022 WL 3018243, at *4 (S.D.N.Y. July 29, 2022). Since defendant serves as the Chief Financial Officer for Nexters, he appears to be a high-level employee at Nexters. (Ngo Decl. ¶ 20). Therefore, service upon Karavaev through a Nexters corporate email may comport with due process. See In re BRF S.A. Sec. Litig, 2019 WL 257971, at *7 (finding "in certain circumstances, it may be appropriate to effectuate service through a confirmed business e-mail address"). In this case, however, the email addresses that plaintiff proposes to use are: r.safiyulin@nexters.com and aa@nexters.com. Plaintiff has offered no evidence to explain how these emails were identified or why communications through these emails are reasonably likely to provide notice to Karavaev; plaintiff simply states that the alternative means for service were determined by "expand[ing] its investigation to identify other avenues for service of process on the Unserved Defendants." (Pl.'s Mem. at 6). In Paushok v. Ganbold, the court held that service by corporate email addresses alone would not satisfy due process because there the plaintiff had offered insufficient evidence to explain why it thought that these were the proper email addresses to use or that these email addresses were still in use. 487 F. Supp. 3d at 245–46. These emails provided by plaintiff in the instant case are not clearly related to defendant Karavaev and plaintiff has not provided any information as to who receives

---

https://www.linkedin.com/company/nexters/; and (c) Twitter: https://twitter.com/nexters. Plaintiff also seeks to serve Karavaev by publishing the requisite documents to a dedicated webpage, designed exclusively to notify the Unserved Defendants of the pendency of this litigation, found at: https://www.qiwisecuritieslitigation.com/." (Pl.'s Mem. at 15–16).

emails through these addresses.  See FTC v. PCCare247 Inc., 2013 WL 841037, at \*4 (holding that service by email comported with due process where the emails, both corporate and personal, were used in the underlying scheme, after first directing plaintiff to file a supplemental letter with the court providing more information regarding the proposed means of service).  More critically, plaintiff has not explained why communication with these specific email addresses could be reasonably expected to reach Karavaev.  Unlike other cases where service through email has been authorized, plaintiff has not shown any prior communications with Karavaev over these particular email addresses.  See Group One Ltd v. GTE GmBH, 523 F. Supp. 3d at 345 (holding service via email was proper where defendants had communicated on prior occasions with plaintiff's counsel using those emails and noting that courts regularly approve service by email where defendants conduct business using those email addresses) (collecting cases); cf. In re BRF S.A. Sec. Litig., 2019 WL 257971, at \*7 (explaining that "a showing of confirmatory phone calls, letters or e-mails, or the filing of recent, relevant publications could help demonstrate that service made to these [business] addresses is reasonably calculated to provide notice").[16]

---

[16] Plaintiff has not asked this Court to authorize alternative service on defendant Karavaev through service on Nexters's counsel or registered agent, nor to retroactively authorize such prior attempts as having been an authorized alternative means of service.  The Court notes that some courts have authorized such means of service in other cases involving foreign defendants.  See Stream SICAV v. Wang, 989 F. Supp. 2d at 280–81 (authorizing service through a corporation's counsel and agent for the corporation's founder and former CEO who worked for the corporation's subsidiary); In re GLG Life Tech Corp. Sec. Litig., 287 F.R.D. at 267–68 (authorizing service on an individual CEO defendant by serving his corporation's registered agent and counsel); see also In re Bibox Corp. Holdings Ltd. Sec. Litigation, 2020 WL 4586819, at \*3; cf. Newmont USA Ltd. v. Imatech Sys. Cyprus Pty Ltd., 2019 WL 3219144, at \*3 (authorizing service via email for a defendant corporation using counsel's email address where that counsel represented a different defendant corporation and both corporations shared a director).  Since there has been no request to approve retroactively service through these avenues and plaintiff has not asked for permission to attempt to re-serve Karavaev through either of these means, the Court offers no view on the sufficiency of these means of service on defendant

Additionally, while plaintiff has proposed service upon Karavaev over certain social media outlets operated by Nexters, including Facebook, Twitter, and a Nexters's LinkedIn account, plaintiff has not explained who will likely receive notice of service through these corporate social media channels or why such service could reasonably be expected to reach defendant Karavaev. Compare In re GLG Life Tech Cop. Sec. Litig., 287 F.R.D. at 267 (finding that "[t]he circumstances of this case make clear that service on counsel for GLG is virtually guaranteed to provide notice to [defendant]" and "[t]he same is true for service on GLG itself: obviously a corporation will inform its own Chairman and Chief Executive Officer of a lawsuit pending against him"); cf. Rosenberg v. Lashkar-e-Taiba, No. 10 CV 5381, 2016 WL 11756917, at *13 (E.D.N.Y. July 5, 2016) (finding service by mail was improper when serving an organization that defendants were allegedly associated with in part because plaintiffs failed to establish the authority of the individuals at the organization who accepted the packages to accept the service of process), report and recommendation adopted as modified by 2017 WL 11647006 (E.D.N.Y. Mar. 31, 2017).

Although plaintiff cites a number of cases that authorize service upon a corporation through social media accounts associated with the corporation or its directors, and service upon an individual through the individual's social media accounts, none of these cases have authorized service upon an individual through the corporation's social media accounts alone. See Hardin v. Tron Found., No. 20 CV 4804, 2020 WL 5236941, at *2 (S.D.N.Y. Sep. 1, 2020) (authorizing service on an individual through a publicly available email associated with the entity founded by the individual, the individual's LinkedIn profile, and a potential personal email); In re Bibox Grp. Holdings Ltd. Sec. Litig., 2020 WL 4586819, at *3 (authorizing service on individuals and

_____

Karavaev.

19

organizations through email, social media, and corporate registered agent); Oscilloscope Pictures, Inc. v. Monbo, No. 17 CV 7458, 2019 WL 2436296, at *2 (E.D.N.Y. Feb. 22, 2019) (noting that the Court had previously authorized service on the individual defendants and their business entity through a personal email address, the entity's Twitter account, mail to defendants' last known residential address, last known business address, and business Post Office Box); United States v. Besneli, No. 14 CV 7339, 2015 WL 4755533, at *3 (S.D.N.Y. Aug. 12, 2015) (authorizing service on an individual defendant by email, through which the parties had already used to communicate, and by publication in a newspaper); F.T.C. v. PCCare247 Inc., 2013 WL 841037, at *6 (authorizing service on individual defendants through their personal email accounts, corporate email accounts, and personal Facebook accounts, and authorizing service on corporations through their individual directors at those individuals' personal email accounts, corporate email accounts, and personal Facebook accounts).

In addition to these proposed methods of service, plaintiff seeks authorization to serve Karavaev through his own personal LinkedIn account. While the Court has no reason to doubt the information provided by plaintiff identifying defendant Karavaev's LinkedIn account, service through Karavaev's personal LinkedIn account alone does not satisfy due process. Plaintiff cites to cases in which service by social media has been authorized. (Pl.'s Mem. at 15). In those cases, however, as plaintiff points out, the courts have ordered service by other means as well – such as by personal email or through the employer's email finding that service along these combined channels is reasonably calculated to satisfy due process where they are used in conjunction with one another. See, e.g., Hardin v. Tron Found., 2020 WL 5236941, at *2 (finding that "[p]laintiffs have identified a publicly available email address associated with Defendant Chen, a possible personal email address, and his LinkedIn account, which, when used

20

in conjunction are reasonably calculated to provide the requisite notice to Defendant Chen")
(emphasis added).

Even with the website publication proposed by plaintiff, it is not clear that service

through Karavaev's LinkedIn account, coupled with service on Nexters's social media accounts

and two unidentified corporate email addresses will reasonably inform defendant of this

litigation and comport with constitutional notions of due process.  Plaintiff has provided no

authority to support a finding that publication by website alone has been previously found to be

an acceptable form of alternative service.  Unlike publication to a widely read newspaper or

magazine, this suggested method of alternative service adds little to the likelihood that

defendants will obtain notice of the lawsuit through this means.  Indeed, the cases plaintiff relies

on to support this method are distinguishable from the instant suggested method; in those cases,

the plaintiff was authorized to send an email with the address of the litigation website or

otherwise deliver a link to the litigation website by means other than social media accounts.  See

Allstar Mktg. Grp., LLC v. Aoyatex Co., Ltd., No. 21 CV 5587, 2021 WL 3501011, at *4–5

(S.D.N.Y. Aug. 9, 2021) (authorizing service by delivering the designated website to defendants

through platforms already used to communicate with defendants or to defendants' email

accounts); Smarty Study Co., Ltd. v. Beijing Longteng Yunqi Trade Co., Ltd., No. 20 CV 6455,

2021 WL 2737392, (S.D.N.Y. July 1, 2021) (same); Berluti SA v. Berlutishoeoutlet.com, No. 20

CV 60708, 2020 WL 6078055, at *2 (S.D. Fla. Apr. 9, 2020) (authorizing service by designated

website and by email of the website address to defendants' email accounts).  Here, plaintiff has

not explained why simply posting the pleadings on plaintiff's website will provide notice to any

of the defendants.  Only if the defendants happen to look for this webpage would they be

provided with notice of the litigation; plaintiff has not proposed any way to send the website to

21

defendants other than through the same means suggested for alternative service, which the Court finds to be insufficient to apprise defendants of this instant action. Compare Apaville LLC v. First Citizens Bank, 2020 WL 13348682, at *3 n.6 (holding "if the Plaintiffs cannot serve the Defendants by email, then they should not be permitted to serve the Defendants by a website the Defendants will only see via (the unauthorized) email service").

Therefore, the means plaintiff proposes using to serve defendant Karavaev are not reasonably calculated to provide defendant Karavaev with notice, nor do they comport with due process.

B.  Defendant Kiseleva[17]

Plaintiff seeks to serve defendant Kiseleva through a personal LinkedIn Profile; a general support email address for Cian (or Cyan) Group; the contact portal on Cian (or Cyan) Group's website; and publication to plaintiff's proposed website.[18]  Again, for similar reasons as those listed above with respect to defendant Karavaev, these alternative means of service proposed for defendant Kiseleva are not reasonably calculated to provide notice.

---

[17] Plaintiff argues in its brief that defendant Kiseleva was already served in this action, because plaintiff served Qiwi on December 21, 2020. (Pl.'s Mem. at 12; ECF No. 5). Assuming *arguendo* that such service would have been sufficient, plaintiff has not provided any support for the contention that Kiseleva worked for Qiwi when Qiwi was served. In its Amended Complaint, plaintiff alleges that defendant Kiseleva left Qiwi "sometime in December 2020." (Am. Compl. ¶ 30). In the absence of evidence suggesting that defendant Kiseleva was still employed at Qiwi when the company was served, it is unclear whether there was proper service on defendant Kiseleva.

[18] Specifically, plaintiff proposes "serv[ing] Kiseleva through: (i) his LinkedIn: https://ru.linkedin.com/in/varvara-kiseleva-45b29526; (ii) an email address associated with Cian (or Cyan): support@cian.ru; and (iii) Cian's corporate portal offered as a means of contacting the company and its employees:  www.cian.ru/contacts.  Plaintiff also seeks to serve Kiseleva by publishing the requisite documents to a dedicated webpage, designed exclusively to notify the Unserved Defendants of the pendency of this litigation, found at: https://www.qiwisecuritieslitigation.com/." (Pl.'s Mem. at 16).

Turning first to the personal LinkedIn profile through which plaintiff proposes to serve Kiseleva, a review of that LinkedIn profile suggests that the Kiseleva identified in the profile is a woman, whereas the Kiseleva referred to in plaintiff's papers appears to be a man, identified by plaintiff with male pronouns.  More importantly, it appears that the Kiseleva identified in the proposed LinkedIn profile no longer works at Cian (or Cyan) Group as plaintiff contends but appears to work at an entity identified as the "X5 Group."[19]

If, in fact, the LinkedIn profile identified by plaintiff is accurate as to the defendant, it is not clear why service on Cian (or Cyan) will reach defendant Kiseleva, since it appears from the profile that the defendant no longer works there but works instead at X5 Group.[20]  Again, as noted with respect to Karavaev, plaintiff has not provided the Court with any information as to how this contact information was discovered or why plaintiff believes it to be reliable.[21]  Given the discrepancies in the information provided to the Court, plaintiff's proposal to serve Kiseleva through this LinkedIn profile or through Cian (or Cyan), even when coupled with publication on

---

[19] According to the LinkedIn profile, it does appear that the Kiseleva identified in the profile worked for Qiwi and after Qiwi, before working for X5 Group, worked as a Director for Capital Markets at a company that may have been Cian (or Cyan).

[20] Plaintiff filed its Motion with the Court on February 25, 2022 (ECF No. 51). However, according to the LinkedIn account, it appears defendant Kiseleva began working with X5 Group in April 2022.  While the lapse in time between the filing of the plaintiff's motion and this Order may explain why the motion omits mention of X5 Group, it is still not likely that service through a prior employer is reasonably calculated to reach the defendant.

[21] Indeed, another website that the Court came across implies that defendant Kiseleva still works at Qiwi as Chief Financial Officer.  See Varvara Kiseleva Net Worth, Wallmine, https://wallmine.com/nasdaq/qiwi/officer/1773947/varvara-kiseleva (last visited Sep. 30, 2022). It is unfortunately quite easy to put false information out on the internet or to create false profiles of people.  Without more assurance that this LinkedIn profile is maintained by the Kiseleva plaintiff intends to serve, the Court cannot authorize service which relies on this channel to give notice to Kiseleva.  Compare Qaza v. Alshalbi, 54 Misc. 3d 691, 696, 43 N.Y.S. 3d 713, 717 (Sup. Ct. Kings Cnty. 2016) (denying plaintiff's motion pursuant to N.Y. C.P.L.R. § 308(5) where it was not clear the Facebook account was really the defendant's and it did not appear to have been used since 2014).

23

plaintiff's website is unlikely to provide notice to this defendant and would not comport with constitutional notions of due process.

C.       Defendant Poshmorga

Plaintiff seeks to serve defendant Poshmorga through his personal LinkedIn Profile; the social media accounts of SDVentures; the contact portal on SDVentures's website; and publication to a website.[22]  For similar reasons, these alternative means of service proposed for defendant Poshmorga are not reasonably calculated to provide notice.

Upon review of the LinkedIn profile that plaintiff claims is Poshmorga's personal LinkedIn account, it appears that defendant Poshmorga has not worked at SDVentures since February 2022.  If the LinkedIn account is accurate, it is not clear why service through SDVentures's social media accounts or the contact portal on SDVentures's website will reach defendant Poshmorga.  Unlike Nexters's website which plaintiff pointed the Court to (Ngo Decl. Ex. H), Poshmorga does not appear on SDVentures' website beyond a passing reference to a "Vlad" on an archived page as a featured employee.  (Id. Ex. F).  As noted supra, the cases that have authorized service through a defendant's social media accounts have required that additional methods of service also be employed.  Thus, given the absence of evidence that Poshmorga continues to have a relationship with SDVentures, the Court concludes that service

---

[22] Specifically, plaintiff proposes "serv[ing] Poshmorga through: Poshmorga through: (i) his LinkedIn:  https://ch.linkedin.com/in/vladislav-poshmorga-3172739; (ii) the social media accounts associated with the company Poshmorga currently serves as CIO for, SDVentures, including:  (a) Facebook:  https://www.facebook.com/SocialDiscoveryVentures; (b) LinkedIn: https://www.linkedin.com/company/social-discovery-ventures/; and (c) Twitter: https://twitter.com/sdventures; and (iii) SDVentures' corporate portal offered as a means of contacting the company and its employees:  http://sdventures.com/contact-us/. Plaintiff also seeks to serve Poshmorga by publishing the requisite documents to a dedicated webpage, designed exclusively to notify the Unserved Defendants of the pendency of this litigation, found at: https://www.qiwisecuritieslitigation.com/."  (Pl.'s Mem. at 16).

24

solely through Poshmorga's LinkedIn profile and publication on the plaintiff's website is not reasonably likely to reach Poshmorga to provide notice of this lawsuit.

D.    Defendant Korzh[23]

Plaintiff seeks to serve defendant Korzh through his Telegram account; his Instagram account; his LinkedIn Profile; and publication to plaintiff's website.[24]

With respect to this defendant, plaintiff enlisted the aid of a professional investigator to identify defendant Korzh's personal information.[25]  (Ngo Decl. ¶ 31).  The investigator's report leaves much to be desired as it simply lists various potential contact information for Korzh without including any narrative as to how the investigator discovered that information or why it would be reasonable to rely on.  (Ngo Decl. Ex. Q).  According to plaintiff, the investigator identified several social media accounts allegedly linked to defendant Korzh, and he has provided a photograph of the individual believed to be defendant Korzh.  According to the investigator's report, Korzh has an Instagram account identified as @pavel___korzh.  (Id.)  A review of this Instagram account, and the LinkedIn account allegedly maintained by Korzh, shows photographs of seemingly different people, none of whom appear to be the individual

---

[23] Although a Summons was issued as to defendant Korzh on July 21, 2021 (ECF No. 31), at that time Korzh did not work for Qiwi.  In its Amended Complaint, plaintiff alleges that defendant Korzh served as CFO from December 1, 2020 to April 2, 2021 and that Qiwi announced his resignation on March 3, 2021.  (Am. Compl. ¶ 31, n.3). Despite plaintiff's assertion that defendant Korzh must have notice of this litigation (Pl.'s Mem. at 12), it is notable that Korzh was not a party to the action when Qiwi was served on December 21, 2020 and it appears Korzh no longer worked at Qiwi when the Summons was issued as to him.

[24] Specifically, plaintiff proposes "serving Korzh through:  (i) Telegram @pavel_korzh; (ii) his Instagram:  @pavel___korzh; and (iii) his LinkedIn: https://ru.linkedin.com/in/pavelkorzh- 61946915.  Plaintiff also seeks to serve Korzh by publishing the requisite documents to a dedicated webpage, designed exclusively to notify the Unserved Defendants of the pendency of this litigation, found at: https://www.qiwisecuritieslitigation.com/."  (Pl.'s Mem. at 16–17).

[25] It is unclear from plaintiff's submissions if this investigator was asked to search for information on the other Unserved Defendants.

25

depicted in the photo of Korzh provided by the investigator in his report. Further, the LinkedIn account in question does not list employment after November 2018, does not include a reference to Qiwi, and does not appear to have been used in the last year. This raises significant concerns as to whether the Instagram or LinkedIn accounts in fact belong to defendant Korzh or if he even checks them regularly.

The investigator also identified a Telegram account, listed in the investigator's report as @pavel_kortzh, which is allegedly connected to defendant Korzh. However, the spelling of Korzh's name in this Telegram account as set forth in the investigator's report differs from the spelling of his name in the Complaint and, in fact, differs from the Telegram account identified in plaintiff's brief as @pavel_korzh. (Compare Ngo. Decl. Ex. Q (spelling Kortzh with a "t") with Pl.'s Mem. at 16 (spelling Korzh with no "t")).[26] Given these discrepancies, it is not clear which, if any, of these social media accounts are actually held by the defendant that plaintiff intends to serve. Without more information explaining these discrepancies and providing an explanation as to why these accounts are likely to belong to the defendant, the Court is unable to conclude that service through these alternative means would be an effective means of service and comport with constitutional notions of due process.

---

[26] The Court understands Telegram to be a messaging application and not like a traditional social media account. Even if it were likely the Telegram account in question belonged to defendant Korzh, the Court is not certain that this method of service could alone comport with due process, especially without more information. Compare CKR Law LLP v. Anderson Invs. Int'l, LLC, 525 F. Supp. 3d 518, 525 (S.D.N.Y. 2021) (authorizing service on an individual foreign defendant through an email associated with the individual's business and a WhatsApp account, where plaintiff had already established defendant had used these accounts to communicate).

CONCLUSION

Plaintiff's Motion for Alternative Service as to the Unserved Defendants is denied without prejudice to resubmit with more information clarifying the concerns raised herein. Should plaintiff petition this Court again to authorize alternative service, plaintiff must be prepared to give the Court more information about why it believes the channels it suggests are reasonably calculated to reach these defendants. Compare CKR Law LLP v. Anderson Invs. Int'l, LLC, 525 F. Supp. 3d 518, 525 (S.D.N.Y. 2021) (denying service by email because "the mere fact that [the address in question] is an operative email address is plainly insufficient without some allegation that the email is associated with [the individual defendant]"); see also FTC v. PCCare247 Inc., 2013 WL 841037, at *4 (explaining how plaintiff uncovered and verified the subject email addresses).

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
       September 30, 2022

*Cheryl L. Pollak*
_____
Cheryl L. Pollak
Chief United States Magistrate Judge
Eastern District of New York

27