UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re QIWI plc Securities Litigation       :   Case No. 1:20-cv-06054-RPK-CLP

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :
                                                               :
This Document Relates To:                   :
                                            :
ALL ACTIONS.                                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS
# THE CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT

SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
Alexander C. Drylewski
William J. O'Brien
One Manhattan West
New York, NY 10001
Phone: (212) 735-3000
Fax: (212) 735-2000
alexander.drylewski@skadden.com
william.obrien@skadden.com

*Counsel for Defendants QIWI plc, Andrey Protopopov, Sergey Solonin, Boris Kim, Alexander Karavaev, Varvara Kiseleva, and Vladislav Poshmorga*

Dated: May 2, 2024

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

I. PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER .................. 1

    A. Plaintiff Does Not Dispute the Absence of Motive ................................................. 1

    B. Plaintiff Does Not Plead Conscious Misbehavior or Recklessness ........................ 1

    C. The Non-Culpable Inference Remains More Compelling ..................................... 6

II. PLAINTIFF FAILS TO PLEAD FALSITY ..................................................................... 6

    A. Plaintiff Does Not Plead Concealment of Unlawful Acts and Deficiencies ........... 6

    B. Plaintiff Does Not Plead Misstatements Regarding Internal Controls ................... 8

    C. Plaintiff Does Not Plead Misstatements About New and Pending Regulations ................................................................................................................ 9

CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re Barclays PLC Securities Litigation*,
  No. 22 Civ. 8172 (KPF), 2024 WL 757385 (S.D.N.Y. Feb. 23, 2024) .............................. 5

*California Public Employees' Retirement System v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004) ............................................................................................ 3

*Canez v. Intelligent Systems Corp.*,
  No. 19-CV-3949 (RPK) (CLP), 2021 WL 3667012 (E.D.N.Y. Aug. 18, 2021) ............... 2

*Chapman v. Mueller Water Products, Inc.*,
  466 F. Supp. 3d 382 (S.D.N.Y. 2020) ............................................................................. 5

*City of Brockton Retirement System v. Shaw Group Inc.*,
  540 F. Supp. 2d 464 (S.D.N.Y. 2008) ............................................................................. 4

*In re Columbia Tuition Refund Action*,
  523 F. Supp. 3d 414 (S.D.N.Y. 2021) ............................................................................. 7

*In re Cronos Group Inc. Securities Litigation*,
  No. 20-CV-1310-ENV-JMW, 2023 WL 8003324 (E.D.N.Y. Nov. 11, 2023) .................. 6

*ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) ............................................................................................ 2

*Employees Retirement System of Government of the Virgin Islands v. Blanford*,
  794 F.3d 297 (2d Cir. 2015) ....................................................................................... 2, 3

*Fresno County Employees Retirement Association v. comScore, Inc.*,
  268 F. Supp. 3d 526 (S.D.N.Y. 2017) ............................................................................. 5

*Gray v. Alpha & Omega Semiconductor Ltd.*,
  No. 20-CV-2414 (RA), 2021 WL 4429499 (S.D.N.Y. Sept. 27, 2021) ........................... 7

*Holbrook v. Trivago N.V.*,
  No. 17 Civ. 8348 (NRB), 2019 WL 948809 (S.D.N.Y. Feb. 26, 2019),
  *aff'd*, 796 F. App'x 31 (2d Cir. 2019) ............................................................................. 6

*Institutional Investors Group v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009) ............................................................................................ 3

*In re Investment Technology Group Inc. Securities Litigation*,
  251 F. Supp. 3d 596 (S.D.N.Y. 2017) ............................................................................. 3

*Karimi v. Deutsche Bank Aktiengesellschaft*,
    607 F. Supp. 3d 381 (S.D.N.Y. 2022) ............................................................................... 10

*Lachman v. Revlon, Inc.*,
    487 F. Supp. 3d 111 (E.D.N.Y. 2020) ................................................................................. 5

*In re Lululemon Securities Litigation*,
    14 F. Supp. 3d 553 (S.D.N.Y. 2014) ................................................................................... 5

*Marcu v. Cheetah Mobile Inc.*,
    No. 18-CV-11184 (JMF), 2020 WL 4016645 (S.D.N.Y. July 16, 2020) ........................... 6

*Martin v. Quartermain*,
    732 F. App'x 37 (2d Cir. 2018) ......................................................................................... 10

*Meyer v. Jinkosolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014) .............................................................................................. 10

*In re Mylan N.V. Securities Litigation*,
    666 F. Supp. 3d 266 (S.D.N.Y. 2023), *aff'd sub nom. Menorah Mivtachim
    Insurance Ltd. v. Sheehan*, 2024 WL 1613907 (2d Cir. Apr. 15, 2024) ............................. 4

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
    575 U.S. 175 (2015) ............................................................................................................ 8

*In re Oxford Health Plans, Inc.*,
    187 F.R.D. 133 (S.D.N.Y. 1999) ......................................................................................... 1

*Palmer v. City of New York*,
    564 F. Supp. 3d 221 (E.D.N.Y. 2021) ................................................................................. 1

*In re Philip Morris International Inc. Securities Litigation*,
    89 F. 4th 408 (2d Cir. 2023) .............................................................................................. 10

*Rosi v. Aclaris Therapeutics, Inc.*,
    No. 19-cv-7118 (LJL), 2021 WL 1177505 (S.D.N.Y. Mar. 29, 2021) ............................... 8

*Santa Fe Industries, Inc. v. Green*,
    430 U.S. 462 (1977) ............................................................................................................ 4

*Singh v. Cigna Corp.*,
    918 F.3d 57 (2d Cir. 2019) .................................................................................................. 5

*Stadium Capital LLC v. Co-Diagnostics, Inc.*,
    No. 22-CV-6978 (AS), 2024 WL 456745 (S.D.N.Y. Feb. 5, 2024) .................................... 1

*In re Telefonaktiebolaget LM Ericsson Securities Litigation*,
    675 F. Supp. 3d 273 (E.D.N.Y. 2023) ................................................................................. 9

*United States ex rel. Hart v. McKesson Corp.*,
　　96 F.4th 145 (2d Cir. 2024)......................................................................................................1

*United States ex rel. McSherry v. SLSCO, L.P.*,
　　No. 18-CV-5981 9ARR) (SLT), 2023 WL 6050202 (E.D.N.Y. Sept. 15, 2023) ...............1

Plaintiff's Opposition merely repeats—many times verbatim—the same conclusory, vague, and fundamentally inadequate allegations that this Court previously rejected.[1] At the same time, the Opposition ignores many of the arguments in Defendants' MTD, thus conceding them. These shortcomings, coupled with QIWI's robust warnings about the uncertain, risky, and rapidly evolving regulatory environment in Russia, provide a compelling inference of *non*-fraud and underscore why dismissal with prejudice is warranted.

## I. PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER

### A. Plaintiff Does Not Dispute the Absence of Motive

Plaintiff does not contest that the SAC fails to add any new allegations of a "concrete and personal" motive for each Defendant to commit fraud. (MTD Order 33; MTD 9-10.) As a result, Plaintiff concedes the point. *See Palmer v. City of New York*, 564 F. Supp. 3d 221, 238 (E.D.N.Y. 2021) (Kovner, J.) (allegations abandoned where plaintiffs failed to respond to arguments in motion to dismiss). Indeed, there are no allegations that any Individual Defendant—much less all of them—sold any QIWI stock during the Class Period. While Plaintiff again mentions the canceled SPO (Opp. 6-7, 20 n.6), the Court has already rejected that allegation (MTD Order 33-34). What is left is no theory of motive at all.[2]

### B. Plaintiff Does Not Plead Conscious Misbehavior or Recklessness

Plaintiff also fails to plead particularized allegations of conscious misbehavior or recklessness, which, given the lack of cognizable motive, must be "correspondingly greater." *ECA*

---

[1] Capitalized terms shall have the same meanings ascribed to them in Defendants' opening brief ("MTD"). Unless otherwise indicated, internal citations have been omitted and *all emphasis is added*.

[2] Even if Plaintiff could reargue this already-rejected contention, many of the cases it cites in support (Opp. 20 n.6) involved allegations of stock sales that were consummated, unlike here. *In re Oxford Health Plans, Inc.*, 187 F.R.D. 133, 139 (S.D.N.Y. 1999); *Stadium Cap. LLC v. Co-Diagnostics, Inc.*, 2024 WL 456745, at *6 (S.D.N.Y. Feb. 5, 2024). Plaintiff's remaining cases (Opp. 20 n.6) did not involve securities claims at all, and the decisions actually *rejected* the plaintiffs' claims. *See United States ex rel. Hart v. McKesson Corp.*, 96 F.4th 145, 160 (2d Cir. 2024); *United States ex rel. McSherry v. SLSCO, L.P.*, 2023 WL 6050202, at *4 (E.D.N.Y. Sept. 15, 2023).

1

*& Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198-99 (2d Cir. 2009); (MTD 28). The Opposition does not dispute that the SAC lacks a single confidential witness allegation, document, or internal communication demonstrating that any Defendant acted with fraudulent intent. Plaintiff attempts to fill this gap with a hodgepodge of arguments, confusingly interspersed throughout various sections of the Opposition. (Opp. 12-14; 18-21; 23-25.) Alone or in tandem, these arguments fail.

*First*, Plaintiff asserts that Defendants' purported "access to information" and "fail[ure] to check" that information gives rise to a strong inference of scienter. (Opp. 12.) But the Opposition does not identify any particularized facts as to what this information was; when Defendants had access to and failed to check it; or how this unspecified information would have alerted them that their Class Period statements were materially false and misleading. These deficiencies cannot be glossed over by Plaintiff's facile conclusion that "Defendants knew or should have known" the truth. (*Id.*); *Canez v. Intelligent Sys. Corp.*, 2021 WL 3667012, at *10 (E.D.N.Y. Aug. 18, 2021) (Kovner, J.) ("[W]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information.").

Plaintiff's citation to *Employees Retirement System of Government of the Virgin Islands v. Blanford*, 794 F.3d 297 (2d Cir. 2015) (Opp. 12), highlights its shortcomings here. In *Blanford*, defendants tried to "deceive auditors" from finding the "true facts about [the company's] excess inventory," including by making "phantom shipments to hide excess inventory, loading trucks with brewers and bags of [product] that either left the facility temporarily or just sat in the dock loaded with product." *Id.* at 308. These particularized allegations were supported by "observations from numerous confidential witnesses," who were "employees from different tiers of the company." *Id.* at 301. And the defendants allegedly sold stock "at opportune moments throughout the Class

2

Period" for tens of millions of dollars. *Id.* at 308-09. That is worlds apart from the SAC here, which contains no such allegations, particularized or otherwise.[3]

Just as importantly, Plaintiff continues to ignore QIWI's actual Class Period statements, which expressly disclosed that the Company's services "have been and may continue to be used for fraudulent, illegal or improper purposes"; the ever-evolving nature of Russian regulations made compliance difficult; and Russian authorities could audit and/or sanction the Company as a result. (MTD 7-9; MTD Order 4, 14, 38.) As the Court recognized, "the numerous warnings about regulatory compliance, audits, and online gambling that defendants included in Qiwi's filings undercut any inference of fraudulent intent." (MTD Order 37.)

*Second*, the Opposition again points to "public reporting" regarding certain of QIWI's competitors (Opp. 12-13), but these allegations were already advanced in the dismissed FAC (MTD 12). Regardless, they cannot demonstrate that any Defendant was aware of QIWI's ***own*** supposed violations, let alone that any Defendant's Class Period statements were false or misleading when made. Plaintiff tacitly acknowledges this problem, arguing that these "reports and conduct, ***taken with the SAC's other allegations***," create an inference of scienter. (Opp. 13.) But none of Plaintiff's allegations are sufficient, and merely "[c]obbling together a litany of inadequate allegations does not render those allegations particularized in accordance with Rule 9(b) or the PSLRA." *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 155 (3d

---

[3] Similarly, in *In re Investment Technology Group Inc. Securities Litigation*, 251 F. Supp. 3d 596 (S.D.N.Y. 2017) (Opp. 12), the complaint alleged that an individual defendant was aware that the company's propriety trading program had "accessed and used confidential client information to benefit [the company's] propriety trading account," knowledge that "Defendants [did] not really dispute." *Id.* at 621 & n.10. At the same time, the individual made statements "denying that [the company] conducted any proprietary trading, even though he participated in the initial decision to approve [the project] and even when it was currently operating." *Id.* at 621. That is a far cry from here.

Plaintiff's other cases (Opp. 12 & n.3) involved far more particularized facts regarding the alleged violations at issue. And in *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009), unlike here, the allegations were extensively supported by "representations of confidential witnesses" that directly contradicted the CFO's public statements. *Id.* at 260, 269.

Cir. 2004); *City of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 475 (S.D.N.Y. 2008) (plaintiffs cannot plead scienter by arguing that "zero plus zero plus zero plus zero adds up to something"). Moreover, Plaintiff does not even acknowledge—let alone distinguish—Defendants' cases holding that only knowledge of **non-public** information can support an inference of scienter, which Plaintiff's cited "public reporting" indisputably is not. (MTD 13 & n.7.)

*Third*, the Opposition argues that QIWI's alleged "regulatory deficiencies support scienter." (Opp. 18.) Even assuming the SAC adequately alleged any "regulatory deficiencies" (and it does not (MTD 15-22)), the mere fact that deficiencies were discovered cannot give rise to a strong inference that Defendants' statements were knowingly false when made. *In re Mylan N.V. Sec. Litig.*, 666 F. Supp. 3d 266, 295 (S.D.N.Y. 2023) (violation of "law or industry practice, even if clearly shown, is not sufficient to support an inference of scienter"), *aff'd sub nom. Menorah Mivtachim Ins. Ltd. v. Sheehan*, 2024 WL 1613907 (2d Cir. Apr. 15, 2024).

Similarly, while Plaintiff argues that the CBR's "remedial measure[s]" against the Company "augments Defendants' scienter" (Opp. 19), the SAC does not adequately allege that the CBR charged QIWI with any violations of the particular rules or regulations Plaintiff identifies, nor does it link them to QIWI's operations during the Class Period. (MTD 18; MTD Order 23, 28.)[4] Regardless, the mere fact that remedial measures were taken does not mean that securities fraud occurred. The federal securities laws regulate disclosure, and "Congress by § 10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanagement." *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479 (1977); *see also* MTD Order 39 ("[T]he CBR's sanctions are not sufficient to establish that the regulatory or recordkeeping violations were

---

[4] Plaintiff argues that QIWI's "2013 regulatory deficiencies support scienter because they related to 'reporting requirements' and internal controls" (Opp. 18) but continues to fail to link these decade-old deficiencies to any Class Period statements or the CBR's decision to fine QIWI for other violations in 2022. (MTD Order 23.)

4

themselves so egregiously obvious that defendants' failure to identify them at an earlier date was reckless."). Plaintiff's argument thus "mimics the typical type of fraud by hindsight theory that courts have been unwilling to entertain," *Chapman v. Mueller Water Prods., Inc.*, 466 F. Supp. 3d 382, 404 (S.D.N.Y. 2020), and ignores the Company's disclosures that "Russian regulators may view [QIWI] as being non-compliant and impose fines or other sanctions on [it]" (MTD 7).

*Fourth*, Plaintiff argues that scienter can be inferred based on "the concession that Defendants 'needed to implement enhanced processes, procedures and controls in order to provide reasonable assurance that we are operating in compliance with applicable regulatory requirements.'" (Opp. 18.) But QIWI's candid disclosures about the need to improve is the opposite of fraud, as they "suggest[ed] caution (rather than confidence) regarding the extent of [Defendants'] compliance," *Singh v. Cigna Corp.*, 918 F.3d 57, 64 (2d Cir. 2019), and thus "render[] implausible [Plaintiff's] suggestion that [Defendants] were engaged in a scheme to deliberately or recklessly mislead investors," *Lachman v. Revlon, Inc.*, 487 F. Supp. 3d 111, 138 (E.D.N.Y. 2020); (MTD Order 38). Plaintiff mischaracterizes these disclosures by claiming, without citation, that Defendants "ma[de] statements about the strength of Qiwi's internal controls." (Opp. 20.) QIWI's disclosures belie this assertion. (MTD 7-9.)[5]

*Fifth*, Plaintiff argues that "Defendants closely analyzed new betting regulations and laws as they rolled out." (Opp. 23.) This is merely a variant of Plaintiff's "should have known" tactics, which fall far short of what the PSLRA requires. The SAC offers no new facts that Defendants

---

[5] Plaintiff's cases on this point (Opp. 19 & n.4) miss the mark, as none involved robust risk disclosures like those here. Moreover, in *In re Barclays PLC Securities Litigation*, 2024 WL 757385 (S.D.N.Y. Feb. 23, 2024), defendants **conceded** their knowledge of the ramifications of the company's change in status. *Id.* at *19. In *Fresno County Employees Retirement Association v. comScore, Inc.*, 268 F. Supp. 3d 526 (S.D.N.Y. 2017), the company self-imposed remedial measures that included "separating certain personnel" while individual defendants "resigned from the Board of Directors within a month of the disclosure." *Id.* at 553. No similar allegations are asserted here. Plaintiff relies on *In re Lululemon Securities Litigation*, 14 F. Supp. 3d 553 (S.D.N.Y. 2014), for the proposition that "remediation of quality control processes supports scienter" (Opp. 19), but the *Lululemon* court ***dismissed*** the claims at issue for failure to allege falsity or scienter. *Lululemon*, 14 F. Supp. 3d at 581, 586.

5

"***actually possessed*** the knowledge highlighting the falsity of public statements," when they possessed such knowledge, or how it rendered their statements misleading. *Marcu v. Cheetah Mobile Inc.*, 2020 WL 4016645, at *7 (S.D.N.Y. July 16, 2020).

*Finally*, Plaintiff again falls back on the "core operations" doctrine (Opp. 24) while ignoring the Court's admonition that this doctrine, even if viable,[6] must involve transactions that amount to "nearly all" of QIWI's business (MTD Order 40). Plaintiff admits that, at most, "bookmaker transactions account[ed] for about 70%" of one of QIWI's business lines, while "betting transactions" represented "a significant portion" of revenues. (Opp. 24.) Plaintiff's parroting of these inadequate allegations does not render them sufficient. *In re Cronos Grp. Inc. Sec. Litig.*, 2023 WL 8003324, at *7 (E.D.N.Y. Nov. 11, 2023) ("core operations" allegations must be "more than merely 'a significant area of business'").

### C. The Non-Culpable Inference Remains More Compelling

Plaintiff still cannot overcome QIWI's "steady stream of warnings" about the acute risks the Company faced regarding "regulatory compliance, audits, and online gambling." (MTD Order 37-38.) These disclosures reflect a Company that was navigating in a rapidly evolving regulatory environment, replete with risks and uncertainties, but that endeavored to inform investors of those risks. This is the opposite of an intent to mislead and, as the Court recognized, "undercut[s] any inference of fraudulent intent pertaining to the statements that plaintiff highlights." (*Id.* at 37.)

## II. PLAINTIFF FAILS TO PLEAD FALSITY

### A. Plaintiff Does Not Plead Concealment of Unlawful Acts and Deficiencies

The Opposition repeats the inadequate allegation that QIWI "did not have processes,

---

[6] "The Second Circuit has not decided whether the 'core operations' doctrine remains valid as a theory of scienter following the PSLRA." *Holbrook v. Trivago N.V.*, 2019 WL 948809, at *22 (S.D.N.Y. Feb. 26, 2019), *aff'd*, 796 F. App'x 31 (2d Cir. 2019). Regardless, at most, it may only "constitute supplementary, but not an independent, means to plead scienter." *Id.*; (MTD Order 40).

6

procedures, or controls to obtain or require records identifying money card holders, and thus did not know or check who customers were before transferring money to e-wallets." (Opp. 8.) But that is directly contradicted by the SAC itself, which concedes that QIWI "***does not*** have a legal obligation to identify its customers." (MTD 16 (quoting SAC ¶ 80).) The Opposition wholly ignores this concession, which is fatal to Plaintiff's theory of falsity. *See In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 423-24 n.1 (S.D.N.Y. 2021) ("[W]here a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss.").

Plaintiff also contends that QIWI "put 'the reasons for its success at issue' without disclosing that illegal or improper conduct materially contributed to that success" (Opp. 11), but still fails to plead any such illegal conduct with particularity (MTD 15-19). Indeed, the Opposition ignores Defendants' argument that the SAC fails to specify how or why QIWI's activities did not fall within an applicable exemption under the regulations cited, which, as QIWI disclosed, required the Company to "make significant judgment calls" and put it at "risk[] [of] being found in non-compliance." (MTD 7, 16-17); *Gray v. Alpha & Omega Semiconductor Ltd.*, 2021 WL 4429499, at *8-9 (S.D.N.Y. 2021) (rejecting falsity claim that failed to address exemptions in cited regulations); (MTD Order 39). By not addressing this point, Plaintiff waives it.

Instead, the Opposition doubles-down on the unsupported claim that QIWI sought to "obscur[e] illegal transactions" through "concealment of unidentifiable or unverified parties." (Opp. 9.) But the opposite is true: QIWI repeatedly and explicitly informed investors that (1) its services "have been and may continue to be used for fraudulent, illegal or improper purposes"; (2) it still "needed to implement" "processes, procedures and controls . . . to provide reasonable assurance that [it is] operating in compliance with applicable regulatory requirements"; (3) its

7

current policies and procedures "may not be fully effective to identify, monitor and manage these risks," and (4) "Russian regulators may view us as being non-compliant" with various rules, including client identification requirements. (MTD 7-8; MTD Order 5-6, 38.) These disclosures defeat Plaintiff's claim that investors were misled.

Plaintiff cannot sidestep this conclusion by pointing to statements about QIWI's "profits and growth" while vaguely claiming that "investors needed to know that unverified and unidentified parties added significant risk to those revenues." (Opp. 9-10.) In fact, the Company readily disclosed that it "could not only become subject to fines and other sanctions, but could also have to discontinue to process transactions" and "as a result lose associated revenue streams." (MTD 8.) Regarding the NPS Law in particular, QIWI warned that it could "slow down the influx of new users" and "ultimately hurt QIWI's revenue stream." (*Id.* at 7.) Plaintiff cannot assert fraud based on the alleged concealment of risks that were actually disclosed. (MTD Order 38.)[7]

### B. Plaintiff Does Not Plead Misstatements Regarding Internal Controls

Similarly, the Opposition misses the mark by arguing that QIWI falsely stated that its "internal controls over financial reporting was effective," and thus "lulled investors into believing" its controls "met the reporting requirements for money transfers." (Opp. 15.) Plaintiff admits that these statements are matters of opinion (*id.*), and thus are subject to the strict pleading requirements of *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175, 183 (2015). (MTD Order 25.) The SAC falls far short of this demanding standard.

*First*, far from touting the strength of its internal controls, the Company repeatedly

---

[7] This case is nothing like *Rosi v. Aclaris Therapeutics, Inc.*, 2021 WL 1177505 (S.D.N.Y. Mar. 29, 2021), upon which Plaintiff heavily relies. (Opp. 9-11.) In *Rosi*, the court held that plaintiff pled all elements of the underlying legal violations with particularity, including that a U.S. agency sent letters to defendants explicitly identifying the violations. *Id.* at *17. The same is true for Plaintiffs' other cases. (Opp. 11-12 & n.3.) Here, by contrast, the SAC does not plead the elements of any underlying legal violations, nor does it allege that the CBR warned QIWI that it was in violation of the AML Law, KYC instructions, National Payment System Law or Betting Law.

informed investors that its controls were a work in progress. (MTD 8.)

*Second*, while Plaintiff still claims that Defendants concealed the July 2020 CBR audit (Opp. 16), the Court has already held that "defendants were not required to inform investors that the CBR was performing a routine audit that had not yet charged Qiwi with misconduct." (MTD Order 29.) Plaintiff continues to fail to identify any facts of which Defendants became aware during the 2020 audit that rendered their statements misleading at that time. Instead, Plaintiff retreats to its refrain that Defendants "knew" QIWI "did not hav[e] the processes, procedures, and controls" to identify issues. (Opp. 16.) This conclusory reasoning is insufficient.

To that end, Plaintiff does not meaningfully respond to QIWI's argument that investors would not have been misled by QIWI's CBR-related disclosures, which advised not only that "[t]he CBR may *at any time*" audit the Company's filings and inspect its books and records, but also that such inspections could "result in discovery of . . . violations" that could lead to material sanctions. (MTD 23); *In re Telefonaktiebolaget LM Ericsson Sec. Litig.*, 675 F. Supp. 3d 273, 291 (E.D.N.Y. 2023) ("[W]here a company's previous potential wrongdoing is already public knowledge[,] . . . investors are even *less* likely to rely on generic compliance-related statements").

Finally, in response to the Court's holding that "plaintiff has not alleged that an audit was ongoing at the time of the statements in question" (MTD Order 30), Plaintiff points to CBR audits of *other companies* in 2019 and cavalierly proclaims that "[n]o more is required" (Opp. 17). But the PSLRA requires much more, and Plaintiff's attempt to skirt its requirements should be rejected. (MTD Order 26 (no requirement to disclose "uncharged, unadjudicated wrongdoing").)

### C.    Plaintiff Does Not Plead Misstatements About New and Pending Regulations

Finally, Plaintiff's theory that certain Defendants made misleading statements about the effects of new and pending regulations (Opp. 21-22) lacks all support. The Opposition now "recognizes" that Solonin's alleged comment—i.e., that a new regulation would "be basically

9

positive" for QIWI—was in response to a specific question about a specific draft bill in 2019. (*Id.* at 22; MTD 23.) Plaintiff nevertheless pivots to argue that "Solonin did not limit his response to the 'draft bill'" because he stated that "any new regulation rules will be basically positive for us." (Opp. 22.) Even if Solonin made the alleged comment, he obviously could not meaningfully opine on any and all new regulations QIWI might face in the future. Regardless, the SAC does not allege particularized facts as to how this forward-looking opinion was misleading.[8]

Plaintiff's attack on Kim's alleged statement—i.e., that QIWI "[had] a chance to be the single TSUPIS" (Opp. 22)—is just as untenable. At the same time, Kim emphasized that the regulatory environment was "uncertain" and that it was "difficult to predict" the draft bill's effect or "who will be the single TSUPIS." (MTD 24.) Kim's opinions urged caution, even as they conveyed some optimism. This cannot constitute fraud. *Martin v. Quartermain*, 732 F. App'x 37, 41-42 (2d Cir. 2018) (a court "must consider the statements at issue 'in light of all [] surrounding text, including hedges [and] disclaimers'"); *In re Philip Morris Int'l Inc. Sec. Litig.*, 89 F. 4th 408, 420 (2d Cir. 2023) ("[S]ecurities laws do not 'require[]' the '[p]eople in charge of an enterprise . . . to take a gloomy, fearful[,] or defeatist view of the future,'" and instead allow them 'to be confident about their stewardship and the prospects of the business that they manage.'").[9]

## CONCLUSION

The Court should dismiss the SAC in its entirety with prejudice.

---

[8] In *Meyer v. Jinkosolar Holdings Co.* (Opp. 17, 22, 25), the company stated that it took specific steps to "ensure" it complied with regulations. 761 F.3d 245, 247 (2d Cir. 2014). By contrast, QIWI explained that it could offer "***no assurance***" of compliance with regulations. (MTD 9.) Its disclosures are also far more specific than those in *In re Didi Global Inc. Securities Litigation*. (Opp. 22.) In *Karimi v. Deutsche Bank Aktiengesellschaft*, (Opp. 17, 22), the defendant "claimed to implement 'special safeguards'" and "had 'effective procedures for assessing clients [via its KYC processes],'" while in fact its processes routinely "fail[ed] to prevent substantial violations of the [applicable] regulations." 607 F. Supp. 3d 381, 393 (S.D.N.Y. 2022). Here, QIWI warned that customers may use its services for unlawful purposes and it did not have adequate processes in place to detect and prevent such conduct. (MTD 7-8.)

[9] Plaintiff's Section 20(a) claim should be dismissed because Plaintiff fails to plead a primary violation by QIWI or "culpable participation" by any (much less all) of the Individual Defendants. (MTD Order at 42.)

Dated: May 2, 2024
New York, New York

*/s/ Alexander C. Drylewski*
Alexander C. Drylewski
William J. O'Brien
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Phone: (212) 735-3000
Fax: (212) 735-2000
alexander.drylewski@skadden.com
william.obrien@skadden.com

*Counsel for Defendants QIWI plc, Andrey Protopopov, Sergey Solonin, Boris Kim, Alexander Karavaev, Varvara Kiseleva, and Vladislav Poshmorga*