Case 1:20-cv-06054-RPK-CLP    Document 90-1    Filed 09/05/24    Page 1 of 6 PageID #: 3793

Boston Retirement System v. Telefonaktiebolaget LM Ericsson, Not Reported in Fed....

2024 WL 4023842
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

BOSTON RETIREMENT SYSTEM, Plaintiff-Appellant,
David Nyy, Plaintiff,
v.
TELEFONAKTIEBOLAGET LM ERICSSON, Borje Ekholm, Carl Mellander, Xavier Dedullen, Defendants-Appellees.

23-940-cv
|
September 3, 2024

Appeal from a judgment of the United States District Court for the Eastern District of New York (William F. Kuntz, II, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment, entered on May 25, 2023, is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Michael P. Canty, Labaton Keller Sucharow LLP (James T. Christie and Danielle Izzo, Labaton Keller Sucharow LLP, New York, New York; Kevin Russell, Goldstein, Russell & Woofter LLC, Washington, District of Columbia, on the brief), New York, New York.

FOR DEFENDANTS-APPELLEES: Robert J. Giuffra, Jr. (David M.J. Rein and Jacob G. Singer, on the brief), Sullivan & Cromwell LLP, New York, New York.

PRESENT: BARRINGTON D. PARKER, JR., DENNY CHIN, JOSEPH F. BIANCO, Circuit Judges.

## SUMMARY ORDER

*1 Plaintiff-Appellant Boston Retirement System ("BRS") appeals from the district court's judgment dismissing the putative class action it brought against Defendants-Appellees Telefonaktiebolaget LM Ericsson ("Ericsson"), Borje Ekholm, Carl Mellander, and Xavier Dedullen (collectively, "Defendants"). BRS asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5. As relevant here, the claims relate to allegations that Defendants made false and misleading statements about Ericsson's anti-corruption policies and controls, as well as its resolution of investigations conducted by the United States government, while concealing its allegedly corrupt business practices in Iraq. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## BACKGROUND

Ericsson is a Swedish telecommunications company that provides hardware, software, and information technology services to customers in over 180 countries around the globe. In 2016, Ericsson disclosed that the United States Department of Justice (the "DOJ") and the SEC had launched investigations into Ericsson's potential violations of the Foreign Corrupt Practices Act ("FCPA"). On December 6, 2019, the DOJ announced that Ericsson had entered into a deferred prosecution agreement (the "DPA") with the DOJ and a settlement agreement with the SEC, and that those resolutions were made in connection with FCPA violations in "at least five countries."[1] Joint App'x at 675–76. As part of the DOJ settlement, Ericsson's Egyptian subsidiary agreed to plead guilty to conspiracy to violate the FCPA's anti-bribery provisions, and Ericsson admitted to participating in the charged conspiracy. Ericsson explained in a press release that, pursuant to the DPA, it had "agreed to engage an independent compliance monitor for a period of three years while the Company continues to undertake significant reforms to strengthen its Ethics & Compliance program." *Id.* at 561. The DPA provided that the monitorship would "reduce the risk of misconduct," given that "[Ericsson] ha[d] not yet fully implemented or tested its compliance program." *Id.* at 121. Ericsson further agreed that, for the duration of the DPA's term, it would report to the DOJ "any evidence or allegation of conduct that may constitute a violation of the FCPA anti-bribery or accounting provisions." *Id.* at 124.

Several years later, on February 15, 2022, Ericsson issued a press release in response to media inquiries, stating that, in 2019, it had initiated an internal investigation covering the period of 2011 through 2019 of Ericsson employees, vendors, and suppliers, that was triggered by "[u]nusual expense claims in Iraq." *Id.* at 650. Ericsson reported that its internal investigation, which was supported by external legal counsel, "found serious breaches of compliance rules

Case 1:20-cv-06054-RPK-CLP  Document 90-1  Filed 09/05/24  Page 2 of 6 PageID #: 3794

Boston Retirement System v. Telefonaktiebolaget LM Ericsson, Not Reported in Fed....

and the Code of Business Ethics" and "corruption-related misconduct" in Iraq, including, *inter alia*, "payments to intermediaries and the use of alternate transport routes in connection with circumventing Iraqi Customs, at a time when terrorist organizations, including ISIS, controlled some transport routes." *Id.* Ericsson further reported that "[i]nvestigators could not determine the ultimate recipients of these payments," but "[t]he investigation could not identify that any Ericsson employee was directly involved in financing terrorist organizations." *Id.*

 **\*2**  On March 2, 2022, Ericsson issued another press release announcing that, one day earlier, the DOJ informed Ericsson that its disclosure to the DOJ "prior to the DPA about its internal investigation into conduct in Iraq in the period 2011 until 2019 was insufficient," and that Ericsson had "breached the DPA by failing to make subsequent disclosure related to [its Iraq] investigation post-DPA." *Id.* at 655. On March 2, 2023, Ericsson agreed to plead guilty to the same FCPA violations to which it previously admitted in the DPA concerning countries other than Iraq, in order to resolve the DOJ's determination that Ericsson breached the DPA based, in part, on the inadequate disclosure to the DOJ regarding Ericsson's internal Iraq investigation.

BRS brought this federal securities class action on behalf of a putative class of investors who acquired Ericsson's American Depository Shares between April 27, 2017 and March 1, 2022. The amended complaint alleges that Defendants, while concealing Ericsson's corrupt business practices in Iraq, made false and misleading statements to investors relating to: (1) the source of Ericsson's strong growth in business in the Middle East (the "Middle East Growth Statements"); (2) the strength of its compliance programs (the "Anti-Corruption Policy Statements"); and (3) its entry into the DPA and purported resolution of the DOJ's investigation into its business practices (the "FCPA Statements").

The district court granted Defendants' motion to dismiss all of the claims asserted in the amended complaint under Federal Rule of Civil Procedure 12(b)(6). *See In re Telefonaktiebolaget LM Ericsson Sec. Litig.*, 675 F. Supp. 3d 273, 300 (E.D.N.Y. 2023). The district court held that BRS failed to plead actionable misrepresentations or omissions with respect to its Section 10(b) and Rule 10-5 claims. *Id.* at 287–95. In the alternative, the district court concluded that BRS did not sufficiently plead scienter or the requisite loss causation with respect to those claims. *Id.* at 295–300. Finally, because it had concluded that there was no primary Section 10(b) violation, the district court found that there could be no control person liability under Section 20(a) of the Exchange Act and, thus, also dismissed that claim. *Id.* This appeal followed.[2]

## DISCUSSION

We conduct a *de novo* review of a district court's grant of a motion to dismiss under Rule 12(b)(6). *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Securities fraud claims must also satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), which require a complaint to "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), including "facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2)(A). *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

A plaintiff bringing a private suit under Section 10(b) of the Exchange Act and Rule 10b-5 must prove: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *GAMCO Invs., Inc. v. Vivendi Universal, S.A.*, 838 F.3d 214, 217 (2d Cir. 2016) (per curiam) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014)). Thus, to survive a motion to dismiss in such cases, "a plaintiff must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021) (internal quotation marks and citation omitted).

 **\*3**  A material misrepresentation or omission must be both (1) false or misleading and (2) material. *See Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019). Whether a statement is false or misleading is "evaluated not only by literal truth, but by context and manner of presentation," *id.* (internal quotation marks and citation omitted), and "depends on the perspective of a reasonable investor," *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575

Case 1:20-cv-06054-RPK-CLP    Document 90-1    Filed 09/05/24    Page 3 of 6 PageID #: 3795

Boston Retirement System v. Telefonaktiebolaget LM Ericsson, Not Reported in Fed....

U.S. 175, 186 (2015). Therefore, to state a claim based on a misleading statement, a plaintiff must plead that the speaker omitted facts whose omission makes the statement misleading to a reasonable investor. *See id.* at 186–87. As for materiality, "[a]n alleged misrepresentation is material if there is a substantial likelihood that a reasonable person would consider it important in deciding whether to buy or sell shares of stock." *Singh,* 918 F.3d at 63 (internal quotation marks and citation omitted). Additionally, for an alleged misstatement to be "material" under Section 10(b), we have held that it "must be sufficiently specific for an investor to reasonably rely on that statement as a guarantee of some concrete fact or outcome." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,* 752 F.3d 173, 185 (2d Cir. 2014).

### I. The Anti-Corruption Policy Statements

BRS challenges the district court's dismissal with respect to the Anti-Corruption Statements made by Ericsson between 2016 and 2018, which related to Ericsson's policies regarding compliance, ethics, and other anti-corruption measures that it was working to improve. The district court held that "[these] compliance- and policy-related statements are unactionable both because of their generality and because [Ericsson] never promised perfect compliance." *In re Telefonaktiebolaget,* 675 F. Supp. 3d at 292. We agree.

We have repeatedly held that "general statements about reputation, integrity, and compliance with ethical norms are inactionable 'puffery,' meaning that they are too general to cause a reasonable investor to rely upon them." *Singh,* 918 F.3d at 63 (quoting *City of Pontiac,* 752 F.3d at 183); *see also ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.,* 553 F.3d 187, 206 (2d Cir. 2009) (holding that defendant's statements that it " 'set the standard' for 'integrity' and that it would 'continue to reposition and strengthen its franchises with a focus on financial discipline' " were non-actionable puffery given their generality (alteration adopted) (citations omitted)); *accord Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.,* 845 F.3d 1268, 1276 (9th Cir. 2017) ("[A] code of conduct is inherently aspirational." (internal quotation marks and citation omitted)).

Here, as the district court explained, the Anti-Corruption Statements consisted of generalized statements about ethics and compliance, such that no reasonable investor would rely upon them. For example, Ericsson's 2016 SEC Form 20-F, filed on April 27, 2017, referred investors to its 2016 corporate governance report which stated, *inter alia,* the following: "[T]o ensure compliance with legal and regulatory requirements and the high standards that we set for ourselves, Ericsson has adopted internal rules that include:" a "Code of Business Ethics"; "Group Steering Documents, including Group policies and directives, instructions and business processes for approval, control and risk management"; and a "Code of Conduct, which applies to product development, production, supply and support of Ericsson products and services worldwide." Joint App'x at 62 (emphasis omitted). Similarly, Ericsson's 2017 SEC Form 20-F, filed on March 27, 2018, stated, "Ericsson has a zero-tolerance approach to corruption expressed in the Company's Code of Business Ethics." *Id.* at 63 (emphasis omitted). That Form 20-F also stated that "[i]n 2017, Ericsson introduced a vetting process that focuses on ethics and compliance" and that "[a]ll members of the current Executive Team have been vetted, and all future recruitment to these positions will also go through mandatory vetting." *Id.* at 64 (emphasis omitted).

**\*4** BRS concedes that the Anti-Corruption Statements did not guarantee "perfect compliance," but asserts that they nevertheless were "false and misleading" because Ericsson "downplayed the risk of FCPA violations when Defendants knew those risks had already materialized." Appellant's Br. at 41–42. We find this argument unpersuasive. Indeed, in making these statements, Ericsson expressly cautioned that "[w]e may fail to comply with our corporate governance standards" and "we cannot assure that violations [of laws and regulations] do not occur." Joint App'x at 383–84 (Annual Report on 2016 SEC Form 20-F); *see also id.* at 455–56 (Annual Report on 2017 SEC Form 20-F). Ericsson also disclosed that it had received hundreds of employee reports of possible misconduct through its "whistle-blower tool, the Ericsson Compliance Line hotline" and other channels. Joint App'x at 437.

To be sure, we recognize that "a company's specific statements that emphasize its reputation for integrity or ethical conduct as central to its financial condition or that are clearly designed to distinguish the company from other specified companies in the same industry" can, "in some circumstances, violate the securities laws." *Ind. Pub. Ret. Sys. v. SAIC, Inc.,* 818 F.3d 85, 98 (2d Cir. 2016); *see, e.g., Meyer v. Jinkosolar Holdings Co., Ltd.,* 761 F.3d 245, 250–51 (2d Cir. 2014) (holding that plaintiff has sufficiently pled that defendant company's statements touting its environmental compliance efforts in an SEC filing—including by referencing specific pollution-abatement equipment, 24-hour monitoring teams, and the fact that it had never been fined for regulatory

Case 1:20-cv-06054-RPK-CLP   Document 90-1   Filed 09/05/24   Page 4 of 6 PageID #: 3796

Boston Retirement System v. Telefonaktiebolaget LM Ericsson, Not Reported in Fed....

violations—were misleading because they "gave comfort to investors that reasonably effective steps were being taken to comply with applicable environmental regulations"). However, Ericsson's Anti-Corruption Statements contained no such specificity that would transform any of those generalized statements from mere puffery to an actionable material misrepresentation.

Accordingly, the district court correctly determined that the Anti-Corruption Statements could not form the basis of a plausible Section 10(b) claim.

### II. The FCPA Statements

BRS also challenges the district court's dismissal with respect to the FCPA Statements, which included statements made by Ericsson between 2019 and 2022 related to the government's FCPA investigations and the risk of future enforcement actions. The district court found that Ericsson's statements regarding entry into the DPA, including the seeming finality of the government investigations, were not misleading given the context in which they were made, "which here includes a steady stream of warnings to investors." *In re Telefonaktiebolaget*, 675 F. Supp. 3d at 294. We agree.

It is well settled that "companies do not have a duty to disclose uncharged, unadjudicated wrongdoing" to investors. *City of Pontiac*, 752 F.3d at 184 (internal quotation marks omitted); *see also In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 365 (2d Cir. 2010) ("Disclosure is not a rite of confession ...." (internal quotation marks and citation omitted)); *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993) ("[A] corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact."). We have nevertheless recognized that, "when [a company] makes a disclosure about a particular topic, whether voluntary or required, the representation must be complete and accurate." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d at 366 (internal quotation marks and citation omitted). In analyzing the disclosure, "the proper inquiry requires an examination of defendants' representations, taken together and in context." *Id.* (internal quotation marks and citation omitted). However, we have emphasized that one disclosure about a particular topic "[does] not trigger a generalized duty requiring defendants to disclose the entire corpus of their knowledge" about related subjects involving the company. *Id.*; *see also Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/A*, 11 F.4th 90, 103 n.4 (2d Cir. 2021) (noting that plaintiffs' "omission-based theory is strained because the connection between the topic [defendant] chose to discuss (a new anonymous reporting system) and the allegedly omitted information ([the whistleblower's] allegations) is fairly attenuated").

**\*5** Here, BRS argues that Ericsson "made a series of misrepresentations ... that emphasized the finality of the DPA" and that "[t]hese statements conveyed that the DPA resolved all then-existing corruption." Appellant's Br. at 29. We are unpersuaded. Ericsson's statements regarding the DPA were sufficiently limited to the scope of the FCPA investigations *by the government* that had already occurred and conveyed nothing about any internal investigations. For example, Ericsson's December 6, 2019 press release stated: "The resolution marks the end of the FCPA-related investigations into Ericsson and its subsidiaries undertaken *by the DOJ and the SEC*." Joint App'x at 562 (emphasis added). BRS points to the statement by defendant Dedullen, Ericsson's then-Chief Legal Officer, to an analyst during the December 7, 2019 earnings call that he was not aware of any "follow-on investigations," *see id.* at 574, and argues that it was misleading because he did not disclose the existence of Ericsson's internal investigation into alleged illegal conduct in Iraq.

However, the district court correctly determined that, when taken in context, Dedullen's statement would be reasonably understood to be related to investigations by a regulator, *not* internal investigations that Ericsson took on itself. Dedullen's statement was made in response to the analyst's question, which asked for an update on regulators' investigations and Ericsson's accounting in its financial statements of the costs of resolving those investigations. In particular, in asking Dedullen the question, the analyst referenced a question he had raised on the prior quarter's analyst call regarding Ericsson's provision for the estimated costs of resolving the FCPA investigations by the DOJ and the SEC, and whether "[i]n terms of the potential for other jurisdictions to look into this, [Ericsson could] just comment at this point, has anything else started at this point?" Joint App'x at 893. Referencing this earlier question, the analyst stated, "[W]henever we had the last color on this, when you took a provision in Q3, I think it wasn't clear to you then whether other investigations in other regions around the same topics might kick off." *Id.* at 574. The analyst then asked for "an update on whether anything else has or you've had any kind of discussions with the regulators." *Id.* After Dedullen responded that "[w]e are not aware of any other follow-on investigations in any of the other countries," the analyst asked two follow-up questions,

concerning "the 2 investigations" and the differences between the DOJ and SEC resolutions. *Id.* at 574–75. Thus, the district court correctly concluded that "[s]ince Defendant Dedullen was responding to a question about the existence of other *government* investigations, he did not mislead investors in stating Ericsson was unaware of further investigations writ large," because "BRS does not allege that, as of December 7, 2019, any regulator had notified Ericsson of an investigation focused on Iraq." *In re Telefonaktiebolaget*, 675 F. Supp. 3d at 295. [3]

**\*6** We also conclude that the remaining allegedly misleading statements by Defendants about the resolution of the FCPA investigations by the government and post-resolution efforts to monitor the effectiveness of its compliance program—including the statement at the time of the DPA that "[w]e're now able to move on and fully focus on our business" and the description of "[i]mprovements to Ericsson's Ethics and Compliance Program," as well as statements in 2021 regarding the DPA's monitorship requirement, Joint App'x at 87–88, 90—were non-actionable "expressions of puffery and corporate optimism [that] do not give rise to securities violations." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004); *see also Scott v. Gen. Motors Co.*, 605 F. App'x 52, 54 (2d Cir. 2015) (summary order) (emphasizing that "explicitly aspirational statements, with qualifiers such as 'aims to,' are inactionable because they are too general to cause a reasonable investor to rely upon them." (internal quotation marks and citation omitted)). Indeed, as the district court noted, these statements were made in the context of "ubiquitous warnings to investors regarding the possibility of future compliance failures and investigations." *In re Telefonaktiebolaget*, 675 F. Supp. 3d at 292.

For example, Ericsson's annual report on its 2019 SEC Form 20-F, filed less than three months after Ericsson entered into the DPA, contained the following warnings: (1) "Ericsson may fail or be unable to comply with laws or regulations and could experience penalties and adverse rulings in enforcement or other proceedings" and "[Ericsson] cannot assure [that violations of laws and regulations] do not occur," Joint App'x at 584; (2) "[Ericsson] may be subject to further adverse consequences following our recent resolutions with the United States Department of Justice (DOJ) and the Securities and Exchange Commission (SEC) of the previously disclosed investigations under the FCPA," *id.* at 585; and (3) "there can be no assurance that the remedial measures we have taken [in relation to the DPA] and plan to take in the future will be effective or that there will not be a finding of material weakness in our internal controls," *id.* at 586. In short, the district court correctly held that, "[s]ince Defendants continuously warned investors Ericsson might fail to comply with regulations and could be the target of future investigations, [the remaining FCPA Statements]—which relate to either Ericsson's purportedly enhanced compliance framework or the resolution of the FCPA investigations—were not misleading." *In re Telefonaktiebolaget*, 675 F. Supp.3d at 293.

### III. Leave to Amend

Finally, BRS asserts that the district court erred in dismissing the amended complaint with prejudice, thereby denying an opportunity to plead fraud with greater specificity. We disagree. BRS suggests that, because Ericsson entered into a plea agreement with the DOJ after the amended complaint was filed with respect to Ericsson's conduct in Iraq, the "new information would allow [it] to plead fraud with greater specificity." Reply Br. at 31. However, nothing in that plea agreement would cure the non-actionable nature of the allegedly misleading statements for the reasons articulated by the district court. Therefore, because any further amendments would have been futile given the inability to cure the legal defects in the claims, the district court properly dismissed the claims with prejudice. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("[A] futile request to replead should be denied.").

\* \* \*

We have considered BRS's remaining arguments and conclude that they are without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

**All Citations**

Not Reported in Fed. Rptr., 2024 WL 4023842

Case 1:20-cv-06054-RPK-CLP   Document 90-1   Filed 09/05/24   Page 6 of 6 PageID #: 3798

Boston Retirement System v. Telefonaktiebolaget LM Ericsson, Not Reported in Fed....

## Footnotes

| | |
|---|---|
| 1 | The DOJ alleged that Ericsson's subsidiaries made improper payments to government officials in Djibouti and improper "off-the-books" payments to secure business in China, Vietnam, Indonesia, and Kuwait. Joint App'x at 675. |
| 2 | On appeal, BRS does not challenge the dismissal of its claims relating to the Middle East Growth Statements alleged in the amended complaint. Therefore, we analyze the claims only as to the Anti-Corruption Policy Statements and the FCPA Statements. Moreover, because we determine, as discussed *infra*, that BRS has failed to sufficiently plead a material misrepresentation or omission, we need not address the district court's alternative grounds for dismissal. |
| 3 | BRS's reliance on our decisions in *Jinkosolar* and Noto v. 22nd Century Group., Inc., 35 F.4th 95, 105 (2d Cir. 2022) is misplaced, as both cases are factually distinguishable. In *Jinkosolar*, the company's statements, involving detailed steps it had taken to ensure compliance with environmental standards, were misleading because those statements failed to disclose that the company was simultaneously reporting to the Chinese environmental regulator a range of serious violations of environmental regulations. 761 F.3d at 248. Similarly, in *Noto*, the company's statement that it had "solved" certain "accounting weaknesses" was misleading because it had issued a "false public denial" about the "existence" of an ongoing SEC investigation of the same matters. 35 F.4th at 105–06. Here, as noted above, there is no allegation of any ongoing government investigation into Ericsson's business activities in Iraq or anywhere else at the time of Dedullen's statement during the December 7, 2019 earnings call. |

**End of Document**  © 2024 Thomson Reuters. No claim to original U.S. Government Works.